**Howard DAVIS, Plaintiff,**

v.

**A. L. FIRMENT et al., Defendants.**

**Civ. A. No. 66–443.**

United States District Court
E. D. Louisiana,
New Orleans Division.

June 13, 1967.

William F. Wessel, New Orleans, La., for plaintiff.

Samuel I. Rosenberg, Pollack, Rosenberg & Rittenberg, New Orleans, La., for defendants.

COMISKEY, District Judge:

Plaintiff Howard Davis filed this suit on behalf of his fifteen year old son, Dave Davis, against the Orleans Parish School Board, its Superintendent, Dr. Carl J. Dolce, and against A. L. Firment, who is the Principal of its John F. Kennedy Senior High School where Dave Davis began his sophomore year on August 31, 1966.

The suit against the School Board prays for damages due to public embarrassment of the father and the son each in the sum of $12,000.00 for the reason that student Davis was suspended from attendance at school, some sixteen days after the academic school year began, because the student's hair was too long, styled somewhat after the Beatle type haircut. In addition to the damages for embarrassment sought by the father and son, plaintiff asks for the issuance of a preliminary injunction on which a hearing was held by this Court. The matter was submitted on affidavits, statements, documents, exhibits and memoranda filed by both sides before and after argument by all counsel. Additionally, defendants filed a motion to dismiss, which by virtue of the procedure, allowing consideration of matters outside the pleadings, will be treated as a motion for summary judgment under Rules 12(b) and 56, Federal Rules of Civil Procedure. There are no disputed material facts.

Plaintiffs' suit is brought under the Civil Rights Act, Title 42 U.S.C. § 1981 et sequitur, and jurisdiction of the Court is sought and admitted under 42 U.S.C. § 1988 on the grounds that the action of defendants violates a federal constitutional right guaranteed the plaintiff under the First, Eighth, Ninth and Fourteenth Amendments of the U. S. Constitution.

Under Louisiana law student Davis must go to school. LSA–R.S. 17:221. Under LSA–R.S. 17:223 school principals are given the right to suspend pupils for "good cause pending a hearing before the  *  *  *  city superintendent of schools" with a right of reversal reserved to the School Board itself. LSA–R.S. 17:416 deals with discipline of students, and one part of this statute gives reasons for suspending students by the principal: "School principals may suspend from school any pupil who is guilty of willful disobedience;  *  *  *."

LSA–R.S. 17:81 empowers the School Board to enact its own regulations:

"Each school board is authorized to make such rules and regulations for its own government, not inconsistent with law or with the regulation of the Louisiana State Board of Education, as it may deem proper."

The Orleans Parish School Board has adopted Rules and Regulations, particularly a regulation known as Section XX adopted May 13, 1957 which provides in part as follows:

"Section XX: Causes for Disciplinary Action

A pupil may be  *  *  *  suspended  *  *  *  according to the nature and frequency of the action, if he (a) Is guilty of willful disobedience

*      *      *      *      *      *

(e) Is guilty  *  *  *  of conduct or habits injurious to his associates."

To implement the principal's right of suspension for "good cause" (17:223), the principal's right to suspend for "willful disobedience" (17:416), and the Board's Rules and Regulations Section XX, the Principal of Davis' high school distributed during the first three days of school a Student Handbook explaining a demerit plan which is geared to promote discipline and which provides for the imposition of demerits which can result in suspension, expulsion or even loss

of school-wide honors. The Student Handbook referred to the fact that regulations regarding dress for students would be posted in all classrooms during these first three days. A mimeographed sheet entitled "Dress and Grooming Regulations" was issued by the principal and posted in all classrooms which included the following regulations, among others:

"1. Hair shall be clean and neat and should be styled in accordance with styles acceptable for school wear.

2. Exceptionally long, shaggy hair and/or exaggerated sideburns shall not be worn * * *."

On September 12, 1966, the Principal issued an attendance bulletin and requested the teachers to advise the students that "Fads and immodesty will not be permitted relative to dress and grooming. * * * Students who do not adhere to this regulation will be given 30 demerits, excluded, and/or suspended. * * *" On September 13, 1966 the principal issued another attendance bulletin containing the same language.

The record in this case further shows that student Davis was told by at least two of his teachers on September 9 and 12, 1966, that his hair should be cut because it was excessively long and violated the Principal's regulations on the subject.

Finally, on September 16, the Principal suspended student Davis for three days because of his failure to have his hair cut in conformity with the Principal's instructions. Student Davis therefore was suspended for willful disobedience to the Principal's instruction to get a hair cut, which instruction was legally given under State law and Board regulations.

Six days after the suspension, student Dave Davis, accompanied by his father, tried to get readmitted at a conference with the Assistant Principal of the school, but readmission was refused. On September 26, 1966, ten days after the suspension, the plaintiff and student Davis, represented by an attorney, held a conference in the office of the Superintendent of the Orleans Parish Schools with two Assistant Superintendents and the Principal of the high school. At this conference readmission was urged despite student Davis' failure to have his hair cut, but those representing the school refused readmission and the Superintendent sustained this position. On the night of September 26, 1966, a petition for review of the Superintendent's decision was presented to the Orleans Parish School Board, a group of elected public officials, and student Davis' attorney presented the case to the School Board with student Davis present. After hearing the argument made by Davis' attorney and permitting the production of any information and evidence, including the inspection of the student's hair, the Orleans Parish School Board went on record with the Superintendent and the Principal as refusing readmission to student Davis unless he obtained a haircut.

On September 28, 1966, Dave Davis was readmitted to the high school when he reported with an appropriate haircut.

■ That student Davis was given a constitutionally valid hearing which complied with due process under the Fourteenth Amendment of the United States Constitution and Louisiana law, supra, is apparent when we consider the many conferences with school authorities on this hair cut issue which finally culminated in a hearing on September 26, 1966 in the office of the Superintendent of Schools with student Davis present and represented by his attorney, and the further review on the night of September 26, 1966, again with student Davis present and represented by his counsel, before the whole Orleans Parish School Board. "A hearing of this sort is quasi judicial in character and must be conducted fairly and impartially." Leonard v. School Committee of Attleboro, 212 N.E.2d 468 (1965). Even plaintiffs' counsel does not allege that the hearings surrounding his client's suspension were

not fair and impartial. His complaint is that the result, upholding suspension, is wrong and violates student Davis' right to keep his hair long and still go to school. The sole issue, the Court feels, is whether or not student Davis has a constitutional right, buttressed by the Civil Rights Act, to keep his hair long in direct disobedience to Rules and Regulations of the Orleans Parish School Board, acting directly and through its Superintendent and its Principal. Plaintiff claims a violation of the First, Eighth, Ninth and Fourteenth Amendments of the United States Constitution.

### FIRST AMENDMENT

Plaintiff contends that by compelling Davis to cut his hair the defendants are infringing upon his First Amendment right of freedom of expression. This argument is grounded upon the assertion that the choice of a particular style of hair grooming constitutes symbolic expression or speech.

Symbolic expression has been held to be entitled to First Amendment protection. West Virginia State Board of Education v. Barnette, 319 U.S. 624, 63 S.Ct. 1178, 87 L.Ed. 1628 (1942). But a symbol must symbolize a specific idea or viewpoint. A symbol is merely a vehicle by which a concept is transmitted from one person to another; unless it represents a particular idea, a "symbol" becomes meaningless. It is, in effect, not really a symbol at all.

It can be said that saluting a flag is a symbolic method of expressing loyalty to the nation represented by that flag or that the wearing of "freedom buttons" by Negroes is "a means of silently communicating an idea and to encourage the members of their community to exercise their civil rights." Burnside v. Byars, 363 F.2d 744, 747 (5th Cir., 1966).[1] But just what does the wearing of long hair symbolize? What is student Davis trying to express? Nothing really.

Even if the wearing of long hair is assumed to be symbolic expression, it falls within that type of expression which is manifested through conduct and is therefore subject to reasonable state regulation in furtherance of a legitimate state interest. In Cox v. State of Louisiana, 379 U.S. 536, 555, 85 S.Ct. 453, 13 L.Ed.2d 471 (1965), the Supreme Court said:

> "We emphatically reject the notion urged by appellant that the First and Fourteenth Amendments afford the same kind of freedom to those who would communicate ideas by conduct such as patrolling, marching and picketing on streets and highways, as these amendments afford to those who communicate ideas by pure speech."

In Burnside v. Byars, supra, the Court of Appeals for the Fifth Circuit made these comments about a school's regulation of the wearing of "freedom buttons" by Negro students as a means of expressing their desire to achieve certain civil rights goals:

> "But the liberty of expression guaranteed by the First Amendment can be abridged by state officials if their protection of legitimate state interests necessitates an invasion of free speech. * * * The interest of the state in maintaining an educational system is a compelling one, giving rise to a balancing of First Amendment rights with the duty of the state to further and protect the public school system. The establishment of an educational program requires the formulation of rules and regulations necessary for the maintenance of an orderly program of classroom learning. In formulating regulations, including those pertaining to the discipline of school children,

---

1. In a footnote the Court pointed out that the wearers of the buttons had stated that they wore them to manifest their belief that they had the right "to speech" and to "[g]o uptown and sit in the drug-stores and wherever we buy things uptown we can sit down and won't have to walk right out at the time we get it" and "to register and vote without being beat up and killed." 363 F.2d 744, 747.

school officials have a wide latitude of discretion. But the school is always bound by the requirement that the rules and regulations must be reasonable. It is not for us to consider whether such rules are wise or expedient but merely whether they are a reasonable exercise of the power and discretion of the school authorities." 363 F.2d 744, 748.

The questions which therefore arise are whether the School Board had a legitimate interest in enforcing grooming regulations and whether this rule was a reasonable means of accomplishing this interest.

The predominant interest of a school is to educate its students. If a particular type of conduct has the effect of disrupting the learning atmosphere, it should be subject to regulation. In Ferrell v. Dallas Independent School District, 261 F.Supp. 545, 551–552 (N.D. Texas, 1966), the Court upheld the right of public high school officials to refuse to allow students to enroll because they were wearing their hair in the "Beatle" type hairstyle and said:

"Since confusion and anarchy have no place in the classroom, school authorities must control the behavior of their students. If the student's dress is lewd or his appearance is a studied effort to draw attention to himself, his presence is disruptive—such behavior is no different than verbal rudeness.

\*    \*    \*    \*    \*    \*

It is inconceivable that a school administrator could operate his school successfully if required by the courts to follow the dictates of the students as to what their appearance shall be, what they shall wear, what hours they will attend, etc."

In Leonard v. School Committee of Attleboro, supra, the Court held that a regulation which prohibited students with "extreme haircuts" from attending classes at a public high school was not unreasonable or arbitrary and had a real connection with the successful operation of the school, since it was reasonably calculated to maintain school discipline. The Court made this observation about the effects of an exaggerated hair style on the orderly conduct of a class:

"We are of opinion that the unusual hair style of the plaintiff could disrupt and impede the maintenance of a proper classroom atmosphere or decorum. This is an aspect of personal appearance and hence akin to matters of dress. Thus as with any unusual, immodest or exaggerated mode of dress, conspicuous departures from accepted customs in the matter of haircuts could result in the distraction of other pupils." Mass., 212 N.E.2d 468, 472.

In the case before the Court there is uncontradicted evidence that hair grooming regulations by the Orleans Parish School Board is based on disciplinary considerations. Dr. Carl J. Dolce, the Superintendent of Schools for the Orleans Parish School Board, said:

"Throughout the realm of professional education there is a distinct and direct relationship between student dress and conduct. \*  \*  \* From my experience, I know that gross deviation from the norm does cause a disruption of the learning atmosphere and can create an undesirable separateness among students. Furthermore, gross deviation can be and has been dysfunctional in the social adjustment of children. \*  \*  \* Dress and appearance do have an effect upon conduct and decorum."

A. L. Firment, the Principal of John F. Kennedy Senior High School, stated:

"During my tenure as principal of the McMain Junior High School and the John McDonogh Senior High School fights occurred because of derogatory remarks made to students with extreme hair styles. In addition to this, these extreme hair styles have created distractions and disturbances in classrooms; therefore I instituted a regulation at the John F. Kennedy Senior High School that prohibited long and shaggy hair or exaggerated side burns.

I am very concerned with preventive discipline."

## NINTH AMENDMENT

Plaintiff's argument under the Ninth Amendment is entirely constructed around Griswold v. State of Connecticut, 381 U.S. 479, 85 S.Ct. 1678, 14 L. Ed.2d 510 (1965). In that case the Supreme Court held Connecticut's anti-contraceptive statute unconstitutional because its enforcement would violate the individual's right to privacy. Justice Douglas wrote the opinion of the Court and said that the particular provisions of the Bill of Rights have "penumbras, formed by emanations from those guarantees that help give them life and substance." The guarantees which Justice Douglas found to form the basis of the right of privacy were the right of association in the First Amendment, the prohibition against the compulsory quartering of soldiers "in any house" in time of peace in the Third Amendment, the protection against "unreasonable searches and seizures" guaranteed by the Fourth Amendment, the Fifth Amendment's Self-Incrimination Clause, which "enables the citizen to create a zone of privacy which government may not force him to surrender to his detriment," and the Ninth Amendment, which provides: "The enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people."

Justice Douglas' only reference to the Ninth Amendment was to quote it, and plaintiff's strong reliance on this provision seems rather to be based on Justice Goldberg's concurring opinion, in which he said that the term "liberty" in the Fourteenth Amendment's Due Process Clause "embraces the right of marital privacy though that right is not mentioned explicitly in the Constitution." To justify this interpretation of liberty, Justice Goldberg asserted that the Ninth Amendment manifests the Framers' desire to give Constitutional protection to other fundamental rights not specifically mentioned in the Bill of Rights:

"The Ninth Amendment simply shows the intent of the Constitution's authors that other fundamental rights should not be denied such protection or disparaged in any other way simply because they are not specifically listed in the first eight amendments."

Plaintiff contends that student Davis has a "fundamental personal right of free choice of grooming" and argues that such a right can be found under the reasoning of the *Griswold* case. But if this case is to fall within the ambit of *Griswold*, there must be some specific provision or provisions of the Bill of Rights from which student Davis' right of grooming emanates, or, if it is permissible to follow the approach of Justice Goldberg, the right must at least be "fundamental". The Court is of the opinion that this right is not of such a nature that it can be based on the guarantees provided in the Bill of Rights and, while the right of *privacy* may be so sacred as to be "fundamental", the same certainly cannot be said for the "right of free choice of grooming."

## EIGHTH AMENDMENT

The suggestion that the requirement that student Davis cut his hair in order to attend school is a cruel and unusual punishment prohibited by the Eighth Amendment is wholly without merit.

In view of the foregoing, the plaintiff's application for a preliminary injunction is denied, and the defendants' motion to dismiss, treated herein as a motion for a summary judgment, is granted.