**John BRICK, by his mother and next friend Virginia Brick, and Virginia Brick, Plaintiffs,**

v.

**BOARD OF EDUCATION, SCHOOL DISTRICT NO. 1, DENVER, COLORADO, et al., Defendants.**

**Civ. A. No. C–1791.**

United States District Court
D. Colorado.

Nov. 7, 1969.

Susan Graham Barnes and Robert G. Busch, American Civil Liberties Union, Lakewood, Colo., for plaintiffs.

Henry, Cockrell, Quinn & Creighton, by Richard C. Cockrell, Victor Quinn and Benjamin L. Craig, Denver, Colo., for defendants.

## MEMORANDUM OPINION AND ORDER

WILLIAM E. DOYLE, District Judge.

This is an action for a declaratory judgment and injunction in which plaintiffs seek to have certain portions of the dress code of South High School declared unconstitutional. The plaintiffs have moved for a preliminary injunction allowing John Brick to attend classes until the final resolution of this case. The issues presented in the motion have been fully briefed and argued and are ready for adjudication.

John Brick, one of the plaintiffs in this cause, is a nineteen-year-old senior at South High School. On October 1, 1969, Brick was late for school for a justifiable reason. He appeared at the administrative office of South High School to secure permission to re-enter classes, but was told by defendants Peonio, Conklin, and Cohen, the Principal, Vice-Principal, and Assistant Dean respectively, that although he might return to classes for that day, he would not be permitted to attend school thereafter until he had his hair cut in compliance with the South High School dress code.[1]

On October 8, 1969, John Brick and his mother, Virginia Brick, who is also a plaintiff in this case, met with defendants Peonio and Conklin who informed them that John would not be readmitted to school until he complied with the dress code. At this time plaintiffs were told that there was no formal appeal procedure which could be followed. Nevertheless, on October 16, 1969, plaintiffs met with the Denver School Board. The School Board on October 20, 1969 determined by a 5–1 vote that the regulation was proper; that John Brick had violated the regulation; and that the South High administration's decision to suspend him until he got a haircut, was correct.

At the hearing on the motion for preliminary injunction the plaintiff John Brick testified in his own behalf. He acknowledged that his long hair did not express any political, ideological, or religious belief, but was rather an expression of his individuality. Plaintiffs' witnesses also included three teachers, two of whom taught at South High School. Brick had been enrolled in the classes of the latter teachers. They testified that Brick was not a discipline problem, although one mentioned that Brick's hair had caused some discussion among other students. The third teacher was from East High School. He testified that there was no restriction on long hair at East,[2] and that he felt long hair in itself had little effect on discipline.

Defendants Peonio and Conklin testified that the South High School dress code was adopted pursuant to Denver Public School Policy 1214A which gives individual schools discretion to adopt rules pertaining to pupil conduct, and that it was not promulgated solely as an expression of the views of the administration. Both parents and students played a significant role in the drafting and adoption of all aspects of the code. The code is periodically reviewed and is presently under review by a committee consisting of two parents, two students, two teachers, and two admin-

---

1. The relevant portion of the South High School dress code provides:
 * * * hair must not be in the eyes, over the ears, or over the collar. Sideburns cut at bottom of ear.

2. Under Denver Public School Policy 1214A, promulgated by the Board of Education, rules may be adopted in each school in the area of pupil conduct. This policy is an attempt to allow each individual school to adopt rules which meet its particular needs. Thus, at East High School and some other Denver schools the dress code does not regulate hair length.

istrators. A survey of students taken in connection with this review indicated that while the students favor changes in other portions of the code, the overwhelming majority wished to maintain the regulation on hair length.

Peonio and Conklin, in testifying to the purpose of the code provision on hair length, stated that there had been two or three fights over the past few years which had resulted directly from student harassment of male pupils with long hair. In one incident a student whose hair was long, although not in violation of the dress code, refused to return to school because of student harassment. Aside from these incidents of disruption the administrators stated that long hair caused distraction among both teachers and students. Students often discuss these extreme hair styles at times when they should be listening to class lectures or discussions. This in turn requires teachers to interrupt their lectures in order to deal with the problem.

The necessity for a regulation dealing with hair length was also testified to by Mr. Stransky, a physical education teacher at South High School, who stated that he objected to long hair because it presented a safety problem in some physical education activities. He indicated that long hair which was constantly falling in the eyes was hazardous in sports such as football, basketball or softball. Approximately two weeks before Brick was suspended, Mr. Stransky had, in connection with a touchball game, told him to get a haircut. Brick and his mother had then taken the matter up with the administration and Brick had been allowed to return to classes without cutting his hair.

■ In applying the law to the above facts, we must note from the outset that our jurisdiction is strictly limited to the question of whether plaintiffs' rights, guaranteed by the Constitution of the United States, have been or are being violated. It is not our function to pass on the wisdom of this regulation, nor do we act as a reviewing body for a school board decision whereby we can determine that there has been an abuse of discretion.

■ Still another limitation is that the plaintiff must, in order to make out a prima facie case for the granting of injunctive relief, show there exists a reasonable probability that he will ultimately be entitled to relief. Continental Oil Co. v. Frontier Refining Co., 338 F.2d 780, 781 (10th Cir. 1965). Plaintiff contends that he has fulfilled all the requirements in that (1) hair length or style is constitutionally protected by the First and Fourteenth Amendments, and that defendants have failed to show an overriding state interest in regulating it; and (2) they maintain that the regulation of hair length is on its face an arbitrary interference with the plaintiff Brick's liberty.

Plaintiffs' assertion is that the length and style of one's hair is in itself a form of symbolic speech protected by the First Amendment; that conduct, like words, can be an expression or dramatization of a moral, sociological, political, religious, or ideological viewpoint. *See, e. g.,* Tinker v. Des Moines Independent Community School Dist., 393 U.S. 503, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969); West Virginia State Bd. of Ed. v. Barnette, 319 U.S. 624, 63 S.Ct. 1178, 87 L.Ed. 1628 (1943). It does not follow, however, that all such action is protected by the First Amendment. The Supreme Court has limited the scope of the symbolic speech protection. Very recently the Court considered the question in a draft card mutilation case and held that this mutilation was not symbolic expression. United States v. O'Brien, 391 U.S. 367, 376, 88 S.Ct. 1673, 1678, 20 L.Ed.2d 672 (1968), wherein the Supreme Court said in part:

We cannot accept the view that an apparently limitless variety of conduct can be labeled "speech" whenever the person engaging in the con-

duct intends thereby to express an idea.

■ In the present case plaintiff has acknowledged that his hair style does not symbolize any political, religious, sociological or moral point of view; stating that the length of his hair was an expression of his individuality. Such symbolic expressions of individuality are not within the First Amendment. *See* Davis v. Firment, 269 F.Supp. 542 (E.D.La.1967). It protects expressions of ideas and points of view which make a significant contribution to the "marketplace of ideas."

■ This does not mean though that conduct of the kind here in question does not have any constitutional protection. It is protected to the extent that the due process clause of the Fourteenth Amendment prohibits an arbitrary deprivation of liberty. This right is, however, both substantively and procedurally distinct from the paramount right to freedom of speech. Where First Amendment rights are involved, the federal courts are required to proceed swiftly, *see* Zwickler v. Koota, 389 U.S. 241, 88 S.Ct. 391, 19 L.Ed.2d 444 (1967), and to give thorough and exhaustive consideration to all issues presented. Legislative power in this area is circumscribed to a much greater degree than in the area of conduct, and courts require that the state come forward with evidence that such a regulation is necessitated by a compelling state interest before its constitutionality will be sustained. NAACP v. Button, 371 U.S. 415, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963); Bates v. Little Rock, 361 U.S. 516, 80 S.Ct. 412, L.Ed.2d 480 (1960).

■ On the other hand, the role of a federal court in reviewing claims that state regulations of liberty violate substantive due process is relatively narrow. "Liberty implies the absence of arbitrary restraint, not immunity from reasonable regulations and prohibitions imposed in the interests of the community." West Coast Hotel Co. v. Parrish, 300 U.S. 379, 392, 57 S.Ct. 578, 582,

81 L.Ed. 703 (1937). The only questions open to courts in determining whether such a regulation violates substantive due process are whether the regulation deals with a matter of legitimate state interest and whether it is a reasonable regulation.

■ In the case at bar the state is advancing a most important interest, that of providing for and promoting the education of its citizens. In this regard, those activities which have a disruptive effect on the learning atmosphere in public schools are proper subjects for regulation by the state and its authorized agents. *See, e. g.,* Tinker v. Des Moines Independent Community School Dist., 393 U.S. 503, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969); Ferrell v. Dallas Independent School Dist., 392 F.2d 697 (5th Cir.), cert. denied, 393 U.S. 856, 89 S.Ct. 98, 21 L.Ed.2d 125 (1968). In the present case the evidence shows that the dress code provision pertaining to hair length was intended to prevent disruption and distraction in the school. Both Mr. Peonio and Mr. Conklin testified that there had been several incidents at South High School involving student harassment of males with long hair and that these incidents had on occasion led to violence. They also testified that unusually long hair on male students caused distraction among teachers and students. We feel that it is within the constitutional power of the state or its agencies to deal with such a problem.

■ Nor can the constitutionality of the dress code provision here in question be determined merely by a finding that John Brick was or was not a discipline problem or a disruptive influence. The reasonableness of this regulation must be considered in light of the overall situation at South High School and the evidence which showed a substantial need for such a measure.

On the basis of all of the evidence it is impossible to conclude that the regulation is unreasonable. The entire dress code at South High School is a

product of the efforts of students, parents, faculty and administrators. Surveys have been taken to determine whether the students wish to retain portions of the dress code, and in the latest survey the students manifested support for the restriction on hair length. The regulation is very specific as to permissible hair length and prohibits only what could be termed "extremes," leaving ample latitude for the various hair styles which appeal to the overwhelming majority of male students.

 Plaintiffs also claim that the South High rule on hair length constitutes a violation of the equal protection clause of the Fourteenth Amendment because it does not apply to all students in the Denver schools. Denver Public School Policy No. 1214A allows each school to adopt its own dress policy. This is an eminently reasonable approach to the problem of student dress. This type of policy not only allows each school to deal with its own particular problems in this area, but also makes it possible for students to play a significant role in adopting and reviewing such dress codes.

The Court is familiar with the fact that a substantial number of cases have considered the constitutionality of regulations relating to hair length.[3] Although there is a split of authority, we feel that the better reasoned view is that which was adopted in Ferrell v. Dallas Independent School Dist., 392 F.2d 697 (5th Cir.), cert. denied, 393 U.S. 856, 89 S.Ct. 98 (1968), and followed in both Crews v. Cloncs, 303 F.Supp. 1370, (S.D. Ind., Sept. 17, 1969) and Davis v. Firment, 269 F.Supp. 524 (E.D.La.1967), aff'd. per curiam, 408 F.2d 1085 (5th Cir. 1969). In *Ferrell*, the Court of Appeals for the Fifth Circuit held that a regulation of hair length of male students is constitutional provided the school board produces evidence of the distractive and disruptive effect which unusually long hair has on the learning process at the particular school in question. The United States Supreme Court denied certiorari over Justice Douglas' lone dissent. In the present case, as indicated above, there was substantial evidence that long hair tended to disrupt school activity and distract students and teachers. We hold that this is sufficient to meet the constitutional test.

Finally, some mention should be made of the recent Supreme Court case of Tinker v. Des Moines Community School Dist., 393 U.S. 503, 89 S.Ct. 733 (1969), which the plaintiffs rely upon to support their claim that the South High School regulation of hair length is unconstitutional. The *Tinker* case does not aid the plaintiffs' cause. In holding that a school could not constitutionally prohibit students from wearing black armbands in protest of the Vietnam war, the Supreme Court specifically distinguished school regulations of hair style and length:

> The problem presented by the present case does not relate to regulation of the length of skirts or the type of clothing, to hair style or deportment. Compare Ferrell v. Dallas Independent School District, 392 F.2d 697 (C.A. 5th Cir. 1968); Pugsley v. Sellmeyer, 158 Ark. 247, 250 S.W. 538, 30 A.L.R. 1212 (1923). It does not concern aggressive, disruptive action or even group demonstrations. Our problem involves direct, primary First Amendment rights akin to "pure speech." 393 U.S. at 507–508, 89 S.Ct. at 737.

3. Ferrell v. Dallas Independent School Dist., 392 F.2d 697 (5th Cir.), cert. denied, 393 U.S. 856, 89 S.Ct. 98, (1968); Crews v. Cloncs, 303 F.Supp. 1370 (S.D.Ind., Sept. 17, 1969); Richards v. Thurston, 304 F.Supp. 449 (D. Mass., Sept. 23, 1969); Griffin v. Tatum, 300 F.Supp. 60 (N.D.Ala.1969); Breen v. Kahl, 296 F.Supp. 702 (W.D.Wis. 1969); Davis v. Firment, 269 F.Supp. 524 (E.D.La.1967), aff'd. per curiam, 408 F.2d 1085 (5th Cir. 1969); Leonard v. School Comm. of Attleboro, 349 Mass. 704, 212 N.E.2d 468, 14 A.L.R.3d 1192 (1965).

In light of the foregoing, we are constrained to deny the plaintiffs' application for a preliminary injunction. It must be and is hereby denied.[4]

4. Although it may offer scant consolation to the plaintiff, we feel constrained to add that from what we have observed and heard in this case, the plaintiff does not need hair style to establish either identity or individuality. Any young man who works as he does washing dishes 20 hours each week in order to support himself and gain an education has certainly found himself, and deserves the respect of all of us.