George **STEVENSON** et al., Plaintiffs,

v.

**WHEELER COUNTY BOARD OF EDU-CATION** et al., Defendants.

**Civ. A. No. 731.**

United States District Court
S. D. Georgia,
Dublin Division.

Nov. 17, 1969.

C. B. King, Albany, Ga., Thomas M. Jackson, Macon, Ga., for plaintiffs.

Wilbur D. Owens, Jr., Macon, Ga., for defendants.

ORDER

LAWRENCE, Chief Judge.

On September 15th I handed down an opinion in six cases brought by the United States against School Boards in the Southern District of Georgia seeking injunctions against the continued failure on their part to comply with commitments made to the Department of Health, Education and Welfare as to desegre-

gation plans to be put into effect at the beginning of the present school year.

Up to that time freedom of choice existed in Wheeler County. During the school year 1968–69 Wheeler County High School, embracing all grades through the 12th, had an enrollment of 556 white and 63 black students. Wheeler County Training School, covering the same grades, had 477 colored and no white pupils. Despite the commitment to the Department of Health, Education and Welfare, the Board kept the choice plan in effect at the commencement of the current school year. Three hundred and twenty-nine black and no white students enrolled at Wheeler County Training School and 532 white and 198 black students enrolled at Wheeler County High School.

The desegregation plan agreed on provided that all students in grades 9 through 12 (the high school level) would attend Wheeler County High School. As a result of the court order mentioned, desegregation of the public school system has been achieved. At the present time the racial proportion of students in high school is 50–50 and the faculty consists of 15 white teachers and 8 colored teachers. The transition from freedom of choice to an integrated system has been accompanied by the problems inevitably connected with the adjustment to integration in a rural Georgia school system. By and large, the new order of things has been accepted. The School Board, Superintendent, principals, faculty and students have tried to make the unitary system work. In the main, the elimination of the dual system has been accomplished orderly and successfully.

All this is suddenly jeopardized by a lilliput of a lawsuit—a legal controversy that has upset everybody in the school system—a *cause celebré* that attracted a courtroom full of spectators when the matter was heard before me on November 12th. How has this new school crisis come about? What does it involve? It concerns the monumental question of the constitutional right of a student to wear a mustache in violation of a regulation of the school authorities.

I have previously expressed my disrelish of the job thrust upon me of saying how public schools should be run. I not only do not have the time but the task is far beyond my competence. Acree v. County Board of Education of Richmond County, D.C., 301 F.Supp. 1285, at 1288. Once again, I am cast in the role of a school administrator. With all my overload of work, I must decide the precise point at which the fuzz or down above the lips of a teenager becomes a mustache.

The issue, however, is not so miniscule as I have made it out to be. The head-on collision between student license and faculty authority possesses serious implications for the successful operation of the Wheeler County schools.

In preparation for the approaching term the Board of Education adopted on August 5, 1969, certain "Policies Governing Students." These included:

> "Good personal grooming as well as behavior lends much to a good learning environment. All students will be expected to meet the standards of good grooming as set by the faculty and administration and interpreted by the principal or assistant principal of the school. These shall include items such as hair cuts, shorts, cullots, length of dresses, shirt tails, etc. These standards in detail will be presented to each student as a supplement to this handbook and will be discussed at length by your homeroom teacher."

At a pre-school planning session the policies were discussed by the members of the faculty. They were implemented in certain respects by spelling out "Neat Haircuts," proper length of dresses, etc. At some point, it is not exactly clear when, the faculty adopted a "clean-shaven" rule for male students. None of these faculty regulations were printed or posted; they are still only in the

form of notes.[1] However, they were announced to all the students at a school assembly. This included the "clean-shaven" regulation. The policies were also announced by the teachers to the students in the various classrooms.

The "good grooming" policies have been uniformly enforced and there has been no racial discrimination. Four white students have been warned by teachers to cut their hair or shave, otherwise not to come back to school. In each case they complied. Nine colored youths have been similarly warned. All of them complied. Three others (the plaintiffs) refused to do so. They were respectively suspended on October 17th, 20th and 23rd. They are still out of school.

Each of the plaintiffs belongs to the Negro race. George Stevenson who is 16 testified that he objected to shaving until he is old enough. He says that he is not yet ready to put a razor to his face and stated that he, not the School Board, is the one to decide when he should do so. Like the other two plaintiffs, he testified that he has never shaved. Stevenson has a small but perceptible mustache. His mother testified that he would shave when he gets old enough and knows of no law requiring him to do so. Larry D. Harvey who is 15 years old but is large for his age proposes to grow a mustache. In fact, he has. He also has a fair growth of fuzz on his chin and his jaws. Avery W. Harvey, Jr., who is 17 objects to shaving and desires to grow a mustache. He already has.

The complaint charges that the expulsion of the plaintiffs has deprived them of rights protected by the Fourteenth Amendment. While petitioners do not allege a First Amendment right to wear a mustache and to attend school unshaven they assert that the constitutionally protected right to express one's individuality is involved. Ethnic factors are also claimed. The suit alleges that as a result of slavery the ancestors of petitioners were dehumanized and their manhood emasculated. They claim that the wearing of mustaches and facial hair growths are symbols for them and other black youths of their masculinity.

There were no racial overtones in the adoption of the "clean-shaven" policy. Among the witnesses for the Board was a colored high school teacher who strongly stressed the importance of good grooming in the educational process. She testified that shaving comes under it. All members of the faculty approved the rule that young men should be clean-shaven. School officials testified that any unusual diversion from the norm has a diverting influence on the student body. The basis of the rule in controversy is that mustaches and facial hair growth are distractive.[2]

In Ferrell v. Dallas Independent School District, 392 F.2d 697, cert. denied 393 U.S. 856, 89 S.Ct. 98, 21 L.Ed.2d 125, the Fifth Circuit Court of Appeals was faced with a case in which several students had been expelled for wearing Beatle-type haircuts. The Court initiated its discussion by attempting to determine the basis or authority for the right claimed to be infringed by the School Board in derogation of the Fourteenth Amendment. It assumed, for purpose of argument, that its origin is to be found in the First Amendment. "We shall assume, though we do not decide, for the purpose of this opinion that a

1. The desirability of *written* rules is mentioned in Zanders v. Louisiana State Board of Education, D.C., 281 F.Supp. 747. Although I find that the "clean-shaven" rule was not in writing, plaintiffs were aware of its existence.

2. In Davis v. Firment, D.C., 269 F.Supp. 524, at 528, the School Superintendent thus articulated the school's side of the controversy: "Throughout the realm of professional education there is a distinct and direct relationship between student dress and conduct * * * From my experience, I know that gross deviation from the norm does cause a disruption of the learning atmosphere and can create an undesirable separateness among students. Furthermore, gross deviation can be and has been dysfunctional in the social adjustment of children."

hair style is a constitutionally protected mode of expression." Proceeding on this premise, the Court adopted the arbitrary-capricious-unreasonable principle applied in earlier First Amendment cases. The majority opinion stated:

"The decided cases clearly demonstrate that each case must be decided in its own particular setting and factual background and within the context of the entire record before the court in determining whether the rule or the action about which complaint is made is arbitrary, capricious, unreasonable or discriminatory. This approach to the problem is clearly demonstrated by the authorities hereinafter cited as well as the following: Thornhill v. State of Alabama, 310 U.S. 88, 101, 60 S.Ct. 736, 84 L.Ed. 1093, 1102; West Virginia State Board of Education v. Barnette, 319 U.S. 624, 627, 63 S.Ct. 1178, 87 L.Ed. 1628, 1637; Dennis v. United States, 341 U.S. 494, 510, 71 S.Ct. 857, 868, 95 L.Ed. 1137, 1153; Whitney v. People of the State of California, 274 U.S. 357, 376, 47 S.Ct. 641, 71 L.Ed. 1095, 1106. In Dennis v. United States, *supra*, the Supreme Court approved, as a general rule, the following statement by Chief Judge Learned Hand: 'In each case [courts] must ask whether the gravity of the "evil," discounted by its improbability, justifies such invasion of free speech as is necessary to avoid the danger.' "

The Court went on to hold in *Ferrell* that the actual and potential interference with the school curriculum created by the particular factual situation justified the sanctions imposed under the school board's regulation of length of hair of students. This *ad hoc* procedural approach adopted by the Court in that case is apparently no longer required in the light of the recent ruling of the Supreme Court in Tinker v. Des Moines Independent Community School District, 393 U.S. 503, 89 S.Ct. 733, 21 L.Ed.2d 731. In that case the highest Court indicated that hair style may be distinguished from other forms of expres-

sion and that it is not a direct, primary First Amendment right. The Court said:

"The problem presented by the present case does not relate to regulation of the length of skirts or the type of clothing, to hair style or deportment. Compare Ferrell v. Dallas Independent School District, 392 F.2d 697 (1968); Pugsley v. Sellmeyer, 158 Ark. 247, 250 S.W. 538, 30 A.L.R. 1212 (1923). It does not concern aggressive, disruptive action or even group demonstration. Our problem involves direct, primary First Amendment rights akin to 'pure speech.' "

The decision in *Ferrell* has been followed recently in the Fifth Circuit in Davis v. Firment, 408 F.2d 1085. Since there was little discussion at the appellate level, consideration of the ruling of the District Judge in that case will be useful. (See 269 F.Supp. 524, 525). The case involved a school regulation to the effect that hair should be neat and that long or shaggy hair or exaggerated sideburns are prohibited. Judge Commiskey wrote:

"The predominant interest of a school is to educate its students. If a particular type of conduct has the effect of disrupting the learning atmosphere, it should be subject to regulation.

\* \* \* \* \* \*

Just what does the wearing of long hair symbolize? What is student Davis trying to express? Nothing really. Even if the wearing of long hair is assumed to be symbolic expression, it falls within that type of expression which is manifested through conduct and is therefore subject to reasonable state regulation in furtherance of a legitimate state interest."

It will also be of interest to consider the opinion of the District Judge in the *Ferrell* case. In Ferrell v. Dallas Independent School District, 261 F.Supp. 545 Judge Taylor said:

"Since confusion and anarchy have no place in the classroom, school au-

thorities must control the behavior of their students. If the student's dress is lewd or his appearance is a studied effort to draw attention to himself, his presence is disruptive—such behavior is no different than verbal rudeness."

I am aware that there are District Court decisions contrary to what is held here, including Griffin v. Tatum, D.C., 300 F.Supp. 60 and Breen v. Kahl, D.C., 296 F.Supp. 702. These decisions would place an intolerable burden on Federal courts to examine each case minutely on its facts in order to determine whether, in a particular instance, the mode of dress or hair style is actually disruptive to the successful operation of the school. In *Breen* the District Judge justified such attention to detail by treating the right to wear long hair as if it were protected by the First Amendment. That theory was expressly rejected in *Tinker, supra*. In *Griffin* the Court considered the facts in considerable detail in an attempt to determine whether or not the hair style was sufficiently disrupting to justify the regulation under attack. It miniates excellently the absurd extremes to which judges who would accept the role of judging tonsorial arrangements must go.

■ Among the things a student is supposed to learn at school (at least, such is my idea) is a sense of discipline. Of course, rules cannot be made by authorities for the sake of making them but they should possess considerable leeway in promulgating regulations for the proper conduct of students. Courts should uphold them where there is any rational basis for the questioned rule. All that is necessary is a reasonable connection of the rule with the proper operation of the schools. By accepting an education at public expense pupils at the elementary or high school level subject themselves to considerable discretion on the part of school authorities as to the manner in which they deport

themselves. Those who run public schools should be the judges in such matters, not the courts. The quicker judges get out of the business of running schools the better. I have no intention of becoming a tonsorial or sartorial consultant of boards, superintendents and principals. Except in extreme cases the judgment of school officials should be final in applying a regulation to an individual case.

■ Counsel for plaintiffs makes much of the fact that the existence of facial hair growth of a student has never created any incidents or commotion in the Wheeler school system and that the regulation requiring shaving is therefore without basis in reason and is arbitrary. The mere fact that a particular hair style or hirsute growth on one's face has not created a classroom disturbance is not conclusive of its unreasonableness. Students wearing mustaches or beards in a high school may be a distracting influence on a student body which does not wear them. Teachers have a right to teach in an atmosphere conducive to teaching and learning and unkempt faces do not contribute much to it. I find the regulation under attack reasonable and not arbitrary. It was adopted in good faith and is not racially oriented.

It is unfortunate that these three young men are not back in school but even more regrettable that they are voluntarily depriving themselves of an education. It is their doing, not mine. All they have to do to get back in school is to shave their upper lips. At the hearing I even suggested that if they did not want to use a razor they could use clippers. This was unsatisfactory to the petitioners who apparently place their right to go to school with hair above their lips and on their faces above getting an education.

The prayer for injunctive relief is denied.