David BROWNLEE, a minor, b/n/f Donald S. Brownlee and Mary S. Brownlee

v.

BRADLEY COUNTY, TENNESSEE BOARD OF EDUCATION; William R. Walker, Superintendent; and Bill Schultz, Principal of Bradley Central High School.

Civ. A. No. 5827.

United States District Court,
E. D. Tennessee, S. D.

April 10, 1970.

---

Charles M. Corn, Cleveland, Tenn., for plaintiff.

Carl E. Colloms, Cleveland, Tenn., for defendants.

## OPINION

FRANK W. WILSON, Chief Judge.

This lawsuit involves the subject of human hair and its grooming on the male of the species, a subject not often thought of as grist for the federal judicial mills. For reasons which find their justification more often in the emotions than in logic, lengthening hair and changing hair style in males has become a strangely sensitive subject both among those who practice the change and among those who resist the change. Some might write the subject off as but an illustration of the wisdom of Ecclesiastes when some three thousand years ago he proclaimed all human foibles to be but "vanity of vanities, all is vanity." (Ecc. 1:2 and 12:8) Others might feel that Alexander Pope, the English poet, said all that need be said to bring the errant to their senses in his famous poem, "The Rape of the Lock." Pope introduces his poetic treatment of the subject with the well known line, "What mighty contests rise from trivial things!" This lawsuit however does not deal with the trivial, as will become apparent to those who pursue the legal ramifications involved. Where male hair length and style is made a condition of admission to a public school, the subject is of more importance than might first appear, for it raises federal constitutional issues and constitutional issues are never of little importance.

This is an action to test the constitutionality of a public school regulation regarding the permissible length of hair upon male students. The plaintiff, David Brownlee, a student at Bradley Central High School, Bradley County, Tennessee, elected not to comply with the regulation and upon his expulsion brought this lawsuit seeking to have the regulation declared void as being in violation of his constitutional rights under the First, Third, Fourth, Fifth, Ninth and Fourteenth Amendments to the United States Constitution. The action is brought pursuant to the Federal Civil Rights Act (42 U.S.C. § 1983) and jurisdiction is admitted.

A hearing was held by the Court sitting without a jury. The relevant facts appear to be largely undisputed and they are as follows. The plaintiff, David Brownlee, is a resident of Bradley County, Tennessee. He first entered Bradley Central High School in the Fall of 1968 as a member of the freshman class and attended throughout that school year. He again re-entered in the Fall of 1969. At that time his hair was not of the conventional length for students in the school, but in order to be eligible to play football he submitted to having his hair trimmed. By the winter semester, however, his hair was again of a length sufficient to cover his ears and extend below his collar. Meanwhile, during January of 1970 the student counsel formulated a "dress code" for students at the school. The plaintiff was advised of the fact that such a code was under consideration by the student council and afforded an opportunity to make any representations to that body that he might desire, but he did not avail himself of this opportunity. Upon recommendation of the student council, the principal of the school adopted the "dress code" as a part of the school program. With re-

gard to hair length to be worn by male students, the code provided as follows: "Boys' hair should be out of the eyes, not over the collar, not covering the ears. No moustaches nor beards to be grown by students."

An announcement with regard to the dress code was made over the public address system at the school in the early part of February, 1970, prior to the events leading to the plaintiff's expulsion from school, but there had been no written publication of the code at that time. Even prior to the adoption of the code the principal had asked the plaintiff upon two or three occasions to have his hair trimmed, but the plaintiff had declined to do so and no further action was taken. Following adoption of the dress code, the plaintiff was sent to the principal's office by a faculty member on February 5, 1970, for failure to comply with the provisions of the code regarding hair length. At that time the principal advised him that he must have his hair trimmed in a manner that would comply with the code. At that time the plaintiff was not formally suspended from school, but he did depart for the day. The next day he went to the Superintendent of Schools office for a conference on the subject of his hair length, and he was again advised that he must have his hair trimmed to comply with the dress code before he would be permitted to return to his classes. On Monday, February 9, 1970, the plaintiff attempted to return to school without having trimmed his hair and, on instructions of the Superintendent of Schools, he was denied admission to classes and was advised that he was formally expelled from school until such time as he should have his hair trimmed in compliance with the dress code. Thereafter on February 11, 1970, the plaintiff's mother held a further conference of some two hours' duration with the Superintendent of Schools regarding the plaintiff's expulsion from school, but without any change in the position previously taken upon each side of the issue. No further requests were made by the plaintiff or his parents for conferences with school authorities in regard to the resolution of the matter. Although it was contended by the plaintiff that some discrimination was practiced in the application of the dress code, the evidence does not support this contention. On the contrary, the evidence reflects no discrimination in the application of the dress code, but rather reflects that other offending students elected to comply when requested to do so by school authorities. The plaintiff, electing not to comply with the dress code, filed this lawsuit as a means of obtaining readmission to the school.

No attempt was made on the part of the plaintiff to give reasons in support of his preference for maintaining his long hair. He does not contend that it represents an expression of any particular attitude or idea upon his part. Rather, it is apparently merely a matter of personal preference with him.

Among the reasons advanced by or on behalf of the school authorities as justification for adoption of the dress code, and particularly that portion of the code dealing with the length of hair of male students, were the following: (1) behavioral problems predominated among male students adopting the long hair style; (2) academic performance declined among male students adopting the long hair style; (3) male students adopting the long hair style sometimes did so as a symbol of hostility toward school attendance or toward school authority, either of which attitudes was undesirable and deserving of discouragement; (4) male students adopting the long hair style caused classroom disruptions and distractions by centering student attention on their unconventional appearance with the result that classroom decorum was disturbed and an adverse teaching situation was created; (5) the reputation of the school suffered in the eyes of visitors by allowing male students to grow unconventionally long hair; and (6) the dress code as developed and recommended by the student council and as approved by the school principal and the school superintendent,

was an expression of a sense of school pride and a reasonable expression of the prevailing sense of propriety within the student body and within the community.

The precise question to be considered by the Court is whether public school authorities may limit the hair length of male students as a condition for admission to a public school without violating some constitutional right of the student. The question, while new to historical constitutional law, is not new to recent litigation in the United States. While there is no United States Supreme Court decision on the exact point, the nearest pronouncement by that Court being in the case of Tinker v. Des Moines Independent Community School District, 393 U.S. 503, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969), a First Amendment case that will be hereinafter considered, there are three Court of Appeals decisions, Ferrell v. Dallas Independent School District, 261 F.Supp. 545 (W.D.Tex., 1966) affirmed 392 F.2d 697 (C.A. 5, 1968) certiorari denied 393 U.S. 856, 89 S.Ct. 98, 21 L.Ed.2d 125; Davis v. Firment, 269 F.Supp. 524 (E.D.La., 1967) affirmed per curiam 408 F.2d 1085 (C.A. 5, 1969); and Breen v. Kahl, 296 F.Supp. 702 (W.D.Wis., 1969) affirmed 419 F.2d 1034 (C.A. 7, 1969), and nine additional published opinions by District Courts dealing with the problem: Zachry v. Brown, 299 F.Supp. 1360 (W.D.Ala., 1967); Griffin v. Tatum, 300 F.Supp. 60 (M.D.Ala., 1969); Crews v. Cloncs, 303 F.Supp. 1370 (S.D.Ind., 1969); Richards v. Thurston, 304 F.Supp. 449 (D.Mass., 1969); Westley v. Rossi, 305 F.Supp. 706 (D.Minn., 1969); Calbillo v. San Jacinto Junior College, 305 F.Supp. 857 (S.D.Tex., 1969); Brick v. Board of Education, School District No. 1, Denver, Colo., 305 F.Supp. 1316 (D.Colo., 1969); Stevenson v. Wheeler County Board of Education, 306 F.Supp. 97 (S. D.Ga., 1969); and Sims v. Colfax Community School District, 307 F.Supp. 485 (S.D.Iowa, 1970). No attempt will be made at this point to analyze the above cases. Suffice it for the present to say that because of somewhat differing factual situations involved and substantially different assumptions regarding the nature of the rights involved, and the burden of proof resting on the respective parties, the courts have arrived at differing conclusions.

As noted above, the plaintiff contends that the hair code here adopted by school authorities violates various provisions of the Bill of Rights. These contentions can appropriately be dealt with rather briefly. It is first contended that male hair length is a mode of symbolic expression and as such may not be limited by public school authorities without violation of the freedom of Speech Clause of the First Amendment. This argument is of necessity premised upon the decision of the United States Supreme Court in the case of Tinker v. Des Moines Independent Community School District, 393 U.S. 503, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969). The problem presented in the *Tinker* case was whether a public school might forbid the wearing of black arm bands by students as an expression of protest toward United States participation in the Vietnam War. The Court held that under the circumstances of the case the wearing of the black arm bands was so closely akin to "pure speech" as to fall within the protection of the First Amendment and that this mode of expression accordingly could not be forbidden by public school authorities in the absence of a showing of actual or potentially disruptive conduct arising therefrom. In rendering its decision the Court expressly excluded from the ambit of the decision the matter of the adoption of dress and hair codes by school authorities, doing so in the following language: "The problem posed by the present case does not relate to regulation of the length of skirts or the type of clothing, to hair style, or deportment. * * * "

Moreover, there is no evidence in the record in this case to support the plaintiff's First Amendment contention. The record is devoid of any evidence that the plaintiff chose to wear long hair as a means of conveying any

thought or belief on his part or as a means of symbolic expression of speech. It is not suggested that the plaintiff's long hair was either aimed or aimless "protest." Rather, it appears from the evidence merely to have been a matter of personal choice with him. No First Amendment problem could arise on this state of the record.

Apart from the plaintiff's First Amendment contention, there is no development either in the evidence or in the briefs of the parties of any constitutional issues other than those related to the Fourteenth Amendment and to its Equal Protection and Due Process Clauses. This Court will accordingly direct its attention to these matters.

The Court has previously disposed of the contention that discrimination was practiced in the application of the dress code to the plaintiff and has found this contention to be without support in fact in the record. As regards due process, some question was initially raised with regard to whether procedural due process was accorded the plaintiff in the matter of his expulsion from school. However, there was no evidence in the record of any fundamental unfairness in the expulsion process. The plaintiff was advised regarding the requirements of the dress code, was warned prior to his expulsion, and following his expulsion both he and his parents were granted hearings by all school authorities of whom a request for a hearing was made.

Likewise, indefiniteness and uncertainty cannot be the basis for the attack here mounted. While in some cases the purported regulation of the hair length of male students could well have gone off on the fact that the regulation was too indefinite in that it existed only in the mind of the principal and was therefore merely an expression of his personal taste [See Richards v. Thurston, 304 F.Supp. 449 (D.C.Mass., 1969)], the regulation here involved was a definite written statement expressing clear guidelines as to the length and style of hair to be prohibited.

The Fourteenth Amendment problem involved in this case comes down to whether the hair regulation leading to the plaintiff's expulsion was arbitrary, capricious, unreasonable, or discriminatory. A public school cannot deny an otherwise eligible student admission to a school by a rule capricious or discriminatory in nature or a rule devoid of reason. On the other hand, the right of the individual to freedom of choice, the essence of individual liberty, is not an absolute right. As stated in West Coast Hotel Co. v. Parrish, 300 U.S. 379, 57 S.Ct. 578, 81 L.Ed. 703 (1937), "Liberty implies the absence of arbitrary restraint, not immunity from reasonable regulations and prohibitions imposed in the interests of the community."

In consequence of the general presumption in favor of the validity of regulations adopted by public bodies acting within their authority, the general rule is that a party alleging the unconstitutionality of a statute or regulation has the burden of substantiating his claim and the presumption of the constitutionality of the regulation will prevail unless its repugnancy to the Constitution clearly appears. Morey v. Doud, 354 U.S. 457, 77 S.Ct. 1344, 1 L.Ed.2d 1485 (1957); National Mutual Ins. Co. v. Tidewater Transfer Co., 337 U.S. 582, 69 S.Ct. 1173, 93 L.Ed. 1556 (1948). This rule regarding the burden of proof may be modified where the complaining party succeeds in establishing that the right alleged to have been infringed is a constitutionally granted right, such as a First Amendment freedom of speech right. See Tinker v. Des Moines Independent Community School District, 393 U.S. 503, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969); Breen v. Kahl, 419 F.2d 1034 (C.A. 7, 1969). The Court will consider this alternative in due course.

Bearing in mind the presumption of validity and taking up the various reasons asserted in support of the validity of the regulation here involved, together with the attack of the plaintiff thereon, it will be recalled that six reasons were

asserted in justification of the regulation. The first reason was that behavioral problems predominated among male students adopting the long hair style. While the principal and certain teachers expressed a qualified opinion in support of this proposition, no real factual basis for the opinion was developed in the record. Moreover, the relationship between behavior and long hair on male students may well be more a matter of coincidence or dual effects than a matter of cause and effect.

The second reason advanced in support of the regulation was that academic performance declined among male students adopting the long hair style. The identical comments stated by the Court in regard to the first reason would be likewise applicable to the second reason.

The third reason advanced in support of the regulation was that male students adopting the long hair style sometimes did so as a symbol of hostility toward school attendance or toward school authority, attitudes deserving of discouragement. Again, while the school principal gave a qualified opinion in support of this position upon being led to do so upon cross-examination, no facts were given in support of the opinion. Moreover, the contention raises a First Amendment problem, a matter previously found by the Court not to be involved in this case.

The fourth reason given in support of the regulation was that male students adopting the long hair style caused classroom disruptions and distractions by centering student attention upon their unconventional appearance with the result that the classroom decorum was disturbed and an adverse teaching situation was created. Some evidence was given in support of this contention by one or more teachers, at least to the extent that it is asserted that the unconventional and extreme appearance created by male students wearing long hair distracts from classroom decorum and creates an adverse teaching situation. This evidence would provide a rationale in support of the validity of the regulation. The Court will have more to say of these matters following a consideration of the two final reasons advanced in support of the regulation.

The fifth and sixth reasons given in support of the regulation may appropriately be considered together. The fifth reason was that the school's reputation was adversely affected in the eyes of visitors by allowing male students to wear unconventionally long hair. The sixth reason advanced was that the dress code, having been adopted by the student council and having been approved by the school authorities was a valid expression of the prevailing sense of propriety within the student body and a valid expression of school pride and as such was deserving of enforcement.

Each of the last three reasons given in justification of the regulation, when reduced to their essence, advance aesthetic considerations as a justification for the dress code.

Although at one time aesthetic considerations were not recognized as an adequate basis for regulation [Women's Kansas City St. Andrew Society v. Kansas City, 58 F.2d 593 at 603 (C.A. 8, 1932)], aesthetic considerations have increasingly come to be recognized as a proper basis for regulation and legislation [Berman v. Parker, 348 U.S. 26, 75 S.Ct. 98, 99 L.Ed. 27 (1954)]. Aesthetics form the basis for many valid restrictions on the use of property, both in deeds and in zoning regulations. It forms the basis for legislation regarding the appearance of junk yards. It forms the basis for regulating signs and billboards along interstate highways. It forms the basis for many of the requirements governing the use and maintenance of residential property. A sense of orderliness, a sense of propriety, and a sense of beauty are distinguishing characteristics of the human species. While not always explainable in terms of concrete reason, these matters are facts of human life. They form the basis of the concept commonly referred to as aesthetics. In these days of growing environmental concern any court denying

that aesthetic considerations may form the basis for public regulation would doubtless find itself swimming against the current in very murky legal waters.

Without going into a philosophical discussion regarding the concept of aesthetics, suffice it to say that long hair on males is contrary to long established practice in the United States and, in the present state of taste, style, and culture, is offensive to many people. Apparently it is offensive to a substantial portion of the student body and school administration at Bradley Central High School with the result that they have adopted a code purporting to forbid hair of unusual and excessive length upon male students. When people are offended, they tend to react, always to the detriment of decorum, and sometimes to the detriment of order.

It is not for this Court to say that the action of the student body and the school administration in adopting the hair regulation acted without any basis in reason. Turning for an illustration to the judiciary itself, while some judges might tolerate longer hair than others, it is safe to venture that if a courtroom bailiff attempted to appear in court with the hair style and appearance of the wild man from Borneo, every federal judge in the land could readily find reason for excluding him from the courtroom. And yet some judges profess to find no reason for school authorities to exclude students from the classroom where decorum is adversely affected by extremes in personal appearance. The matter of decorum in the courtroom stands on no loftier rational nor constitutional basis than does decorum in the classroom. A lack of decorum is conducive neither to the adjudication of justice nor to the imparting of an education.

■ This Court accordingly concludes that the regulation of hair length on male students at Bradley Central High School was neither arbitrary nor capricious, nor was it devoid of reason. There accordingly is no Fourteenth Amendment violation in its application to the plaintiff.

■ It should be emphasized that in reaching this conclusion it is not the role of the Court to pass upon the wisdom or lack of wisdom of the regulation. The courts do not sit to review the wisdom of legislation or regulation by public bodies, for these matters address themselves solely to the legislative or regulating body. United States v. American Union Transport, 327 U.S. 437, 66 S.Ct. 644, 90 L.Ed. 772 (1945). It might well be that where conduct or obscenity are not factors, the better part of wisdom would be to leave to social pressures and social acceptance the regulation of matters of style and personal appearance, for most persons desire the approval of their peers or at least have the manners not to go out of their way to offend the sensibilities of their peers. It is not for the Court to pass upon these matters.

■ Though not raised by the parties in the proof or in their briefs, there remains to consider a line of authority best exemplified by the case of Breen v. Kahl, 419 F.2d 1034 (C.A. 7, 1969). The *Breen* case holds that since the right to privacy, though not expressly protected by the Bill of Rights, has now been recognized by the United States Supreme Court in the case of Griswold v. Connecticut, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1964), as a constitutionally protected right within the "penumbra" of various of the first ten amendments, matters pertaining to personal appearance are included within the right to privacy. The Court therefore concludes that the right to wear hair of any length or style is a constitutionally guaranteed right. While the validity of this conclusion is itself subject to criticism, since the right to privacy is so ill defined as to rationally be capable of expansion to include every human activity, the conclusion in the *Breen* case and other cases following the line of authority that hair length is a constitutionally protected right, is not of itself conclusive of the issues here presented. Rath-

er, it is recognized that the right to privacy, like other constitutionally guaranteed rights, is not absolute, but is subject to regulation upon an adequate showing of the reasonable necessity therefor. Taking its cue from the decision of the United States Supreme Court in the Griswold v. Connecticut case, *supra*, the Court in the Breen v. Kahl case states the rule as follows: "To limit or curtail this or any other fundamental right, the state has a 'substantial burden of justification.'"

No attempt is made in the *Breen* case to reconcile this statement of the rule with the long line of authority asserting the presumption-in favor of the validity of a duly enacted statute or regulation and casting upon the complaining party the burden of proving invalidity. The failure to reconcile the two statements of the rule accounts in part for the divergent conclusions reached in the reported cases on the issue of the constitutionality of a public school regulation of hair length on male students. The confusion thus engendered renders some of the reported cases on the subject interesting but not persuasive authority.

While not so expressly stated, the rule imposing on the regulatory body the "substantial burden of justification" is in reality a rule defining and shifting the burden of proof to the party advocating the validity of the regulation once the party attacking validity has established that the right sought to be regulated is in fact a right guaranteed under the Bill of Rights. Otherwise, the burden remains upon the party asserting the unconstitutionality of the statute or regulation to substantiate his claim of invalidity, with the presumption of validity applying.

This Court cannot but question the wisdom of some who would seek to enshrine every right in the Constitution. But assuming, without deciding, the correctness of the conclusion in Breen v. Kahl, *supra*, that hair style and length is a constitutionally guaranteed right, this Court would conclude that the Bradley County School Board has carried the substantial burden of justifying the regulation of male students' hair length under the evidence here presented and for the reasons hereinabove stated.

This opinion will stand as the Court's findings of fact and conclusions of law. An order will enter denying the issuance of an injunction and dismissing the plaintiff's lawsuit.

Having commenced with the poet, Alexander Pope, it would not appear inappropriate to allow him the final words, too:

"O hadst thou, cruel! been content to seize Hairs less in sight, or any hairs but these!"

### ADDENDUM

Since the filing of the Court's opinion in this case, the case of Jackson, et al. v. Dorrier, et al., 424 F.2d 213 (C.A. 6, April 6, 1970) has been decided. The Court of Appeals for the Sixth Circuit in that case dealt with substantially the same issues and arrived at the same conclusion as did this Court in its opinion. The court there concluded that the regulation of hair length of male students had a "real and reasonable connection with the successful operation of the educational system" and that such regulation accordingly did not violate any of the petitioner's constitutional rights.