**Tyler CREWS, a minor, by his father and next friend, Borden Crews, Plaintiff,**

**v.**

**Eugene CLONCS, individually and as Principal of North Central High School, et al., Defendants.**

**No. IP 69–C–405.**

United States District Court
S. D. Indiana,
Indianapolis Division.

Sept. 17, 1969.

Craig E. Pinkus, Indiana Civil Liberties Union, Henry J. Price, David L. Allison, and Thomas W. Ross, Indianapolis, Ind., for plaintiff.

Ben J. Weaver and Charles G. Reeder, of Johnson & Weaver, Indianapolis, Ind., for defendants.

## MEMORANDUM OPINION

NOLAND, District Judge.

The plaintiff, Tyler Crews, age 16 years, brings this action by his father and next friend, Borden Crews. The defendants are Eugene Cloncs, Principal of North Central High School; Dr. J. Everett Light, Superintendent of the Metropolitan School District of Washington Township; Billy Walker, Vice-Principal of North Central High School; Dr. H. Dean Evans, Assistant-Superintendent of said School District, and the following named elected members of the Board of Education, Metropolitan School District of Washington Township: John R. Mote, William T. Ray, Dr. Ray H. Behnke, William L. Smart, and Ted B. Lewis. The plaintiff requests injunctive relief requiring the defendant school authorities to admit him to North Central High School without his first complying with the school's requirement of a satisfactory hair length and style under announced rules and regulations.

This action was filed August 27, 1969, one week prior to the opening of North Central High School. At a pre-trial con-

ference on September 2, 1969, the Court announced that there would be a trial on the merits and that a determination would be made as to all issues raised and as to all relief requested. A trial date was set and a trial was had before the Court on September 11, 1969. The matter was submitted on oral testimony by both sides as well as on depositions and documentary evidence. Briefs were filed on behalf of the respective parties.

This Memorandum Opinion shall constitute the Findings of Fact and Conclusions of Law.

Plaintiff's suit is brought under various jurisdictional allegations including Title 28 U.S.C. §§ 1331, 1343(3) and (4), 2201 and 2202; Title 42 U.S.C. § 1981 et seq.; "The Civil Rights Act of 1964"; and the Constitution of the United States, more particularly the First, Fourth, Fifth, Sixth, Eighth, Ninth, Tenth and Fourteenth Amendments thereto. Jurisdiction is present.

The plaintiff contends that the defendants have violated his Constitutional rights by suspending him from attendance at North Central High School until he cuts his hair to a length specified by the defendants.

The length of plaintiff's hair on various dates was stipulated for the record and a picture of plaintiff was introduced in evidence showing his appearance in the fall of 1967, after he had cut his hair as required by Vice-Principal Billy Walker. At the various times complained of, and at the time of suspension, it is admitted that plaintiff's hair was over his ears and below his collar, contrary to the school's requirement of hair length "above the collar, above the ears and out of the eyes".

The Court would note that at the time of the pre-trial conference, the plaintiff's hair was parted in the middle and hung several inches below the shoulders in back and on the chest in front, in what would normally be described as feminine in style. Nine days later, at the trial, the plaintiff had cut his hair; however his hair, parted in the middle, still extended over the ears, over the collar, and reached to shoulder length. After this haircut and before the trial, plaintiff again requested that he be admitted to North Central High School, but was denied by the school principal since this haircut still did not meet the announced hair style requirement.

It appears from the evidence and the testimony that the plaintiff, Tyler Crews, will be 17 years of age on September 24, 1969. He last attended classes at North Central High School on a regular basis during the 1967–68 school year. It would appear that the plaintiff received credit for completing his sophomore year of high school during 1967–68. However, he was refused admission to his physical education class and to his biology class because of the length of his hair. In order to stay in school during the year 1967–68, plaintiff did cut his hair so that it was above his ears, over the collar and out of his eyes. The last time he cut his hair prior to the commencement of the litigation was probably January 1968.

Plaintiff first received specific instructions as to the length of his hair in September of 1967. Both Mr. Eugene Cloncs and Mr. Billy Walker, Principal and Vice-Principal at North Central, talked to the plaintiff about the length of his hair, giving him specific instructions as to the standard which was required. Plaintiff sets the earliest date of these conversations as September 1967.

At the end of the year 1967–68, Superintendent Cloncs informed plaintiff, Tyler Crews, that he would have to have his hair cut if he wanted to come back to school in the fall. Rather than cut his hair, plaintiff elected to attend night classes at Broad Ripple High School during the school year 1968–69. Vice-Principal Billy Walker wrote a letter allowing the plaintiff to attend Broad Ripple night school. No attempt was made by the plaintiff to gain admission to North Central High School until the late spring of 1969, at which time there were several conversations between various school au-

thorities and Borden Crews, father of the plaintiff.

At the plaintiff's request, on June 16, 1969, a hearing was accorded to representatives of the plaintiff. Tyler Crews was not present; however, he was represented at this regular School Board Meeting of the Metropolitan School District of Washington Township by his father, a psychologist with whom he had been consulting, and a lawyer. This hearing lasted approximately three-quarters of an hour. It was then announced that the School Board would review the matters involving Tyler Crews at a special meeting on June 19, 1969. The result of this meeting was the adoption of a resolution, which reads as follows:

"The history and record of Tyler Crews was presented to the Board of Education by Mr. Cloncs, Principal of North Central High School and Dean Evans, Assistant Superintendent.

"After a thorough discussion of the matter, upon motion duly made, seconded and unanimously carried, the following resolution was adopted:

'BE IT RESOLVED, That the request for admission to North Central High School of Tyler Crews be denied, unless the said Tyler Crews conforms to the reasonable rules and regulations as to the length of his hair, for the best interests of the discipline, government and management of North Central High School.'"

Thereafter, plaintiff commenced this action.

The defendants contend that the basis for the rule on hair length is contained in the inherent authority of school officials, under the laws of the State of Indiana, to promulgate reasonable rules and regulations. A letter was sent at the beginning of each school year to all parents of North Central students, reading in part as follows:

"The dress and general appearance of North Central students has been through the years a source of pride to the members of the school faculty. Studies have shown a positive correlation between the appearance of a person and his general behavior. * * * Parents of North Central students are asked to assist their sons and daughters in maintaining a favorable standard of appearance at school."

The defendants' sole reason for the suspension of the plaintiff, Tyler Crews, was his failure to get his hair cut according to the announced standards. No other complaint was made that the plaintiff was a disciplinary problem. He was not a musician and the length of his hair had nothing to do with a hobby or religious conviction. The plaintiff's statement why he wore his hair long was as follows:

"I think it looks better for one reason, and for another reason, I don't associate with a group, but I try to disassociate with general society, you know, people that look normal, because I am not entirely satisfied with things that are happening like this."

Considerable testimony was given on behalf of the defendants by school officials and teachers that long hair on boys created class disruption and discipline problems. The defendants also contended that there were health and safety hazards involved in physical education classes. North Central High School has an enrollment of approximately 3,000 students. Altogether there have been about twelve cases involving violation of haircut standards. Ten of these cases have been solved by students voluntarily getting a haircut, upon request to comply with the over-the-collar, above-the-ears, out-of-the-eyes requirement. One other student besides Tyler Crews has elected to remain in a suspended status rather than get his hair cut.

Defendants state unequivocally that unusual hair styles such as long hair disrupt the classroom atmosphere, impede classroom decorum, cause disturbances among other students in attendance, and result in the distraction of other students so as to interfere with the educational process in the high school.

■ It is conceded by both the plaintiff and the defendant that the Washington Township School Board's power and authority stem from the Indiana Constitution and from the Statutes of the State of Indiana. They further agree that the Washington Township School Board is undoubtedly empowered to make reasonable rules and regulations concerning student behavior. It is further agreed that it has long been recognized in Indiana that the final and conclusive determination of the reasonableness of such rules is for the courts. Fertich v. Michener, 111 Ind. 472, 11 N.E. 605, reh. den., 14 N.E. 68 (1887); School City of Evansville v. Culver, 94 Ind.App. 692, 182 N.E. 270 (1932).

The authority of school boards and school administrators to use their discretion in enforcing rules and regulations, including the right to exclude or suspend students violating such rules and regulations is summarized in 11 Ind. Legal Encyclopedia, Education, Sec. 192, pp. 295, 296 and 297, as follows:

"School authorities have a reasonable discretion in determining what is necessary to maintain discipline in the schools under their control, and they adopt reasonable rules and regulations for the discipline and government of such schools. * * *

"School authorities not only have the power to promulgate reasonable rules and regulations for the discipline and government of the schools under their control, but they also have the powers to enforce such rules by the proper means. * * *

"School authorities have the power to suspend, expel, or exclude pupils from school for infractions of their rules or where the welfare of the school system requires such action on their part."

■ This Court has no desire to interfere with the duly constituted authority of school boards and school administrators to adopt and to enforce reasonable rules and regulations. Neither does the Court propose to substitute its judgment for that of the school boards and school administrators absent a clearly defined violation of Constitutional rights. As recently stated by the Supreme Court:

"Judicial interposition in the operation of the public school system of the Nation raises problems requiring care and restraint. * * * By and large, public education in our Nation is committed to the control of state and local authorities. Courts do not and cannot intervene in the resolution of conflicts which arise in the daily operation of school systems and which do not directly and sharply implicate basic constitutional values." Epperson v. Arkansas, 393 U.S. 97, 104, 89 S.Ct. 266, 21 L.Ed.2d 228 (1968).

The long hair case of today may be a shaven head case tomorrow, or a brilliantly dyed hair case of some other time. The possible extremes of dress and attire are nearly unlimited.

Plaintiff complains that his suspension from North Central High School violated both procedural and substantive aspects of the due process clause of the Fourteenth Amendment.

## PROCEDURAL DUE PROCESS

■ That the case of plaintiff, Tyler Crews, was given constitutionally valid consideration, which complied with procedural due process under the Fourteenth Amendment of the United States Constitution, is apparent from a review of the evidence as to the meetings which took place on the haircut issue. As previously pointed out, the haircut issue between the plaintiff and the defendants arose during the school year of 1967–68. The plaintiff was informed as early as September of 1967 as to what kind of haircut was required. Plaintiff, at least on two occasions, complied with the rule announced to him that the hair must be over the collar, above the ears, and out of the eyes. At any time after plaintiff was suspended during the school year 1968–69, he could have been readmitted had he complied with the regulation. For some reason unknown to the Court, plaintiff did not see fit to contest the

action of the Washington Township school authorities during the school year, but instead voluntarily attended night classes at Broad Ripple High School. When plaintiff and his advisers concluded that this was an unsatisfactory arrangement, plaintiff's duly designated representatives, including a psychologist and an attorney, presented his case at a regular meeting of the School Board on June 16, 1969. Thereafter, the School Board, on July 19, 1969, confirmed any and all action taken by the duly designated school administrators in suspending the plaintiff until he complied with the haircut requirement. There is no allegation that these actions by the School Board were not fair and impartial. The Court would consider this hearing as adequate and as meeting the procedural due process requirements.

## SUBSTANTIVE DUE PROCESS

Plaintiff alleges that the action of the school authorities constitutes an unjustifiable infringement of his substantive due process rights under the First and Fourteenth Amendments, asserting that the wearing of long hair constitutes symbolic speech. In Tinker v. Des Moines Independent Community School Dist., 393 U.S. 503, 89 S.Ct. 733, 21 L. Ed.2d 731 (1969), the Supreme Court held that the wearing of black arm bands by secondary school pupils protesting the Vietnam war constituted symbolic speech protected by the First Amendment; however, it is not so clear a question whether wearing long hair in this case is also First Amendment protected speech.[1]

■ In view of the vagueness of plaintiff's answer to the question why he wears long hair, set out above, this Court assumes without deciding that plaintiff's choice of hair styles is an expression of opinion which constitutes symbolic speech protected by the First Amendment. However, it is clear that the right to free expression is not absolute, and that it may be infringed by state authority upon a showing of a compelling reason; particularly is this the case when "pure speech" is not involved but rather conduct which reflects or is imbued with speech or opinion. Cox v. State of Louisiana, 379 U.S. 536, 555, 85 S.Ct. 453, 13 L.Ed.2d 471 (1965).

Here the interest of the state is in maintaining an orderly and efficient school system, an academic atmosphere in which knowledge can be peacefully transmitted to the pupils. The importance of this state interest cannot be overstated.

> "Today education is perhaps the most important function of state and local governments. Compulsory school attendance laws and the great expenditures for education both demonstrate our recognition of the importance of education to our democratic society. It is required in the performance of our most basic public responsibilities, even service in the armed forces. It is the very foundation of good citizenship." Brown v. Board of Education, 347 U.S. 483, 493, 74 S.Ct. 686, 691, 98 L.Ed. 873 (1954).

■ To require the school authorities to attempt to carry out the educational function in an atmosphere of turmoil and disruption would be ludicrous; hence, conduct which has the effect of bringing about disruption, whether intending that effect or not, may constitutionally be proscribed within reason. Ferrell v. Dallas Independent School District, 261 F.Supp. 545 (N.D.Texas 1966), aff'd 392 F.2d 697 (5th Cir. 1968), cert. den. 393 U.S. 856, 89 S.Ct. 98, 21 L.Ed. 2d 125 (1968). The Court considers the Ferrell case to be very well reasoned and highly persuasive.

In the case at bar, evidence was presented, and this Court finds, that plaintiff's appearance directly caused disturbances and disruption of the educational

---

1. The Court in *Tinker* stated that: "The problem presented by the present case does not relate to regulation of the length of skirts or the type of clothing, to hair style or deportment."

**1376**

process, both in the academic classroom and during physical education classes. Plaintiff's conduct "materially and substantially interfere[d] with the requirements of appropriate discipline in the operation of the school." Burnside v. Byars, 363 F.2d 744, 749 (5th Cir. 1966).

■ It is important to note that the disruption found here resulted not from the very fact that a student had violated a rule; rather, it resulted directly from plaintiff's wearing long hair. Had disruption resulted indirectly merely because a pupil chose to flaunt the school's authority by violating a rule, it would lend absolutely no constitutional support to the rule itself. Breen v. Kahl, 296 F.Supp. 702 (W.D.Wis.1969).

■ Tinker v. Des Moines Independent Comm. School Dist., supra, dealt with conduct closely akin to "pure speech". Yet the Court held that:

"[C]onduct by the student, in class or out of it, which for any reason— whether it stems from time, place, or type of behavior—materially disrupts classwork or involves substantial disorder or invasion of the rights of others is, of course, not immunized by the constitutional guaranty of freedom of speech." *Tinker*, supra.

*A fortiori*, where the conduct involved is wearing long hair, which is rather far removed from "pure speech", the Constitution permits reasonable regulation on a showing of classwork disruption.

■ The Court concludes that although plaintiff's conduct may have been protected under the First Amendment, still the defendants have not unconstitutionally infringed his substantive due process rights for the reason that plaintiff's conduct directly and materially interfered with a vital interest of the state. Authorities relied upon by plaintiff such as Breen v. Kahl, supra, and Griffin v. Tatum, 300 F.Supp. 60 (M.D. Ala.1969), are inapposite as not involving a showing of direct classroom disruption.

**EQUAL PROTECTION**

Plaintiff argues that the defendants' rule against long hair constitutes an arbitrary and unreasonable classification, and that his suspension for violation of the rule constitutes a denial of the equal protection of the law guaranteed by the Fourteenth Amendment to the Constitution.

■ However, it is only the invidious discrimination which is prohibited by the Fourteenth Amendment. Williamson v. Lee Optical of Okla., 348 U.S. 483, 75 S.Ct. 461, 99 L.Ed. 563 (1955). Even though plaintiff's conduct here is assumed to be constitutionally protected, still the defendants' enforcement of the long hair regulation is so directly related to the furtherance of a vital and important state interest, that of the maintenance of a peaceful forum for the educational function, that this Court finds no violation of equal protection rights. No arbitrary or capricious discrimination appears; in view of the disruption shown to have resulted, no unreasonable conditions have been attached to the plaintiff's continuing his education within the Washington Township Schools. Cf. Griffin v. Tatum, supra.

**RIGHT OF PRIVACY**

Finally, plaintiff argues that under the case of Griswold v. State of Connecticut, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965), there is a right of privacy, indeed a right of personality or of individuality, which is within penumbras of particular provisions of the Bill of Rights, formed by emanations which help give life and substance to the explicit constitutional guarantees, and with which the state may not interfere. In *Griswold* the Court held that a statute making use of contraceptives illegal was unconstitutional as violative of such an individual right of privacy.

■ In effect, plaintiff urges that a secondary school pupil has a fundamental personal right of free choice of grooming. In the circumstances of this case, the Court disagrees. While the

right of privacy of a husband and wife may well be a fundamental right within the philosophy and framework of the Bill of Rights, a choice of grooming in the public schools is not such a fundamental right. Davis v. Firment, 269 F.Supp. 524 (E.D.La.1967). A real and substantial constitutional difference exists between the two courses of conduct—to ignore it would be myoptic. As stated by Justice Goldberg, concurring in *Griswold*, supra, in determining which rights are fundamental, judges must look to the

> " 'traditions and [collective] conscience of our people' to determine whether a principle is 'so rooted [there] * * * as to be ranked as fundamental.' The inquiry is whether a right involved 'is of such a character that it cannot be denied without violating those fundamental principles of liberty and justice which lie at the base of all our civil and political institutions'." (Citations omitted.)

Even should it be felt that choice of hair style is included within the right of privacy, no one suggests that it is an unrestricted right. It appears to the Court that the state has met its "substantial burden of justification", (Justice White, concurring in *Griswold*, supra,) of the regulation by a showing of the classwork disruption which resulted directly from plaintiff's conduct. Little harm will result to plaintiff from trimming his hair—his opinions and beliefs, personality and individuality, will still be his own; contrasted to this result, if plaintiff is permitted to attend school with long hair, uninvolved pupils, who are completely indifferent to plaintiff's hair style, will be impeded in attaining the education they need and deserve.

## CONCLUSION

On the basis of the foregoing, the Court concludes that the law is with the defendants and against the plaintiff. The plaintiff is not entitled to an injunction requiring the defendants to admit him to North Central High School without first complying with the school's regulations as to length of hair.

Plaintiff is entitled to secure re-admission to North Central High School at such time as he complies with the announced hair style requirement of "above the collar, over the ears, and above the eyes."

Judgment for the defendants shall be entered in accordance with this Opinion.