Neale WOOD, a minor, by his mother and next friend, Katrina Wood, Plaintiffs,

v.

**ALAMO HEIGHTS INDEPENDENT SCHOOL DISTRICT et al., Defendants.**

Civ. A. No. SA69CA398.

United States District Court
W. D. Texas,
San Antonio Division.

Jan. 27, 1970.

Frank Herrera, Jr., San Antonio, Tex., for plaintiffs.

George H. Spencer, Clemens, Knight, Weiss & Spencer, San Antonio, Tex., for defendants.

SPEARS, Chief Judge.

Plaintiff Katrina Wood brought this action on behalf of her fourteen-year old son, Neale Wood, against Alamo Heights Independent School District, its Superintendent and Board of Trustees, and the Principal of Alamo Heights High School, seeking an injunction and damages for suspension of the minor plaintiff from school because the length of his hair did not conform to the standards prescribed by the school. Plaintiff alleges the First and Fourteenth Amendments are violated by enforcement of the school's rules, and that jurisdiction is based on the Civil Rights Act, Title 42 U.S.C. sec. 1981 et seq.

Plaintiff sought a temporary restraining order, which this Court denied after a hearing at which plaintiff Katrina Wood and school officials testified, and affidavits of the minor plaintiff and plaintiff Katrina Wood were considered.

Upon hearing plaintiffs' application for temporary injunction and defend-

ants' motion to dismiss, which is here treated as a motion for summary judgment,[1] it is determined that the defendants' motion to dismiss should be granted and that plaintiffs' motion for temporary injunction should be denied.

The evidence was that the Alamo Heights High School for some time has had a written dress and grooming code for its students. When plaintiff Neale Wood started his freshman high school term and at the time suit was filed, the school's code provided:

> "The following guides are designed to insure appropriateness of student dress for school, yet permitting as much freedom of choice as possible for students to keep in style * * * Hair should be neat, clean, and well-groomed, and the length should not be over the eye brows, collar or ears. Sideburns will be permitted to the point where the lower part of the ear is attached, but must be straight and kept trimmed. No 'mutton chop' styles are permitted. Beards, mustaches, and other expressive male styles are disapproved."

Testimony showed that before promulgating the present student grooming regulations, the school administration sought the recommendations of a committee of students representing all facets of student life and adopted in large part the recommendations of this student committee. In addition, school officials sought and received the advice and counsel of fashion and grooming experts on the subject of new hair and dress styles of students. The record further shows that the school's grooming regulations have been changed from time to time, as reflected by testimony to the effect that only a short time ago the regulation fixing the length of side burns was amended when the attention of school administrators was called to the fact that longer side burns had become the accepted style, and just recently the school's

regulations were modified to permit girls at the school to wear slacks.

Under the circumstances, it is indeed difficult to see how the school could have been any more considerate of its students, and still meet its responsibilities in maintaining order and implementing the educational program of the school. Insofar as this Court has been able to determine, there is no other reported case in which the school authorities have allowed the students themselves to become such an integral part of the decision-making process with respect to grooming regulations.

Aside from the testimony showing the lack of an arbitrary or capricious spirit in adopting the rules of the school, the record establishes that the grooming regulations are reasonably necessary to insure the effective operation of the school and promote the discipline and decorum of its students. There was some evidence that "borderline" hair styles had not created incidents at the school, but even if this is true it would not compel a conclusion that the regulation is unreasonable. More than ample testimony was presented to the effect that extreme hair styles may, and probably would, be a disrupting influence on a student body which does not wear them. Certainly school officials are not forbidden to take steps necessary to prevent that which they have good reason to believe would otherwise result in a breakdown of school discipline.

Under Texas law (Wilson v. Abilene Independent School District, 190 S.W.2d 406, Tex.Civ.App.1945), school boards are given a wide discretion with respect to problems and situations arising in the administration of the schools. "They may make all such rules and regulations as in their judgment are necessary to maintain an 'efficient' system of schools, subject to the limitation that

---

1. Rules 12(b), 56, Federal Rules of Civil Procedure; Davis v. Firment, 269 F. Supp. 524 (E.D.La.1967), affirmed, 408 F.2d 1085 (5th Cir. 1969).

there be no abuse of discretion, and that such regulations be not arbitrary, unreasonable or in violation of law."

In deciding this type of case, the Fifth Circuit, in Ferrell v. Dallas Independent School District, 392 F.2d 697 (5th Cir. 1968), cert. denied, 393 U.S. 856, 89 S.Ct. 98, 21 L.Ed.2d 125 (1968) said, in part:

"The decided cases clearly demonstrate that each case must be decided in its own particular setting and factual background and within the context of the entire record before the Court in determining whether the rule or the action about which complaint is made is arbitrary, capricious, unreasonable or discriminatory. * * * "

Where the entire record, as here, shows the regulation to be reasonably necessary to insure the efficient and effective operation of the school, and promote the discipline or decorum of its students, the regulation is valid.

In noting the Fifth Circuit's decision in *Ferrell*, the Supreme Court, in deciding a case involving a school's prohibition against students wearing arm bands to protest the Vietnam war, stated:

"The problem posed by the present case does not relate to regulation of the length of skirts or the type of clothing, to hair style, or deportment. Cf. Ferrell v. Dallas Independent School District, 392 F.2d 697 (1968); Pugsley v. Sellmeyer, 158 Ark. 247, 250 S.W. 538, 30 A.L.R. 1212 (1923). It does not concern aggressive, disruptive action or even group demonstrations. Our problem involves direct, primary First Amendment rights akin to 'pure speech.' * * * this case does not concern speech or action that intrudes upon the work of the schools or the rights of other students." Tinker v. Des Moines Community School District, 393 U.S. 503, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969).

The decision in *Ferrell* has been recently followed in Davis v. Firment, 408 F.2d 1085 (5th Cir. 1969) which, in a *per curiam* opinion, affirmed the district judge, who said, among other things:

"The predominant interest of a school is to educate its students. If a particular type of conduct has the effect of disrupting the learning atmosphere, it should be subject to regulation." 269 F.Supp. 524.

Plaintiffs have relied upon decisions from other circuits and upon Griffin v. Tatum, 300 F.Supp. 60 (M.D.Ala.1969); Zachry v. Brown, 299 F.Supp. 1360 (N.D.Ala.1967); and Calbillo v. San Jacinto Junior College, 305 F.Supp. 857 (S.D.Tex.1969).

In Griffin v. Tatum the court found the school's justification for the hair cut regulation lacking in sufficient relation to school requirements of appropriate discipline, and held the regulation to be an arbitrary and unreasonable classification. In the case at bar more than an "undefined fear or apprehension of disturbance" has been shown. Experienced school administrators and teachers testified that extremes in hair style have in the past created classroom distractions and disturbances, and their opinions that lack of reasonable limits for student grooming would substantially affect discipline and decorum are not without reasonable basis. And in *Griffin* there was no student participation in arriving at the school grooming rules, a factor which, in the present case, seems to demonstrate the reasonable and considerate approach taken by the school administrators.

Zachry v. Brown and Calbillo v. San Jacinto Junior College involved grooming regulations applied to college students. In the first place, it would appear that considerations of discipline and decorum for high school students, such as the fourteen-year old plaintiff here, and those for college students are quite different. In addition, *Ferrell*, 392 F.2d, at page 703 notes that in Zachry v. Brown the questioned regulation "was promulgated solely because the school administrators thoroughly disliked what they considered exotic hair styles. No

suggestion was made that such haircut had any effect upon the health, discipline, or decorum of the institution." Thus *Zachry* is essentially different from both *Ferrell* and the instant case.

In Calbillo v. San Jacinto Junior College the regulation of the college was shown by the evidence to have been "enacted to implement the personal distaste of certain school officials for beards and certain hair styles and for the beliefs and attitudes which they thought these beards and hair styles represented.". As in *Zachry*, therefore, no relation to discipline or the efficient teaching process was shown.

Upon Breen v. Kahl, 296 F.Supp. 702 (W.D.Wis.1969), affd., 419 F.2d 1034 (7th Cir. 1969) plaintiffs also place reliance. In that case the majority opinion found that substantial justification for the school's grooming regulation was not made out by the evidence. However, as has been noted, the evidence in the case at bar directly related extremes in hair style to classroom and campus disruption and distraction, and a substantial relation of the school's grooming regulation to student discipline and decorum was shown by the testimony of experienced classroom teachers and school administrators.

Richards v. Thurston, 304 F.Supp. 449 (N.D.Mass.1969), which is relied on in *Breen* and by plaintiffs in the case at bar, is dissimilar on its facts, since the Court there was careful to point out that the evidence simply revealed that the action by the school principal was based on his personal opinion, and there was no written regulation promulgated by the school and no evidence whatever that discipline of the school was affected. By way of dicta in a "second supplementary opinion," the Court indicated his disagreement with the holding in Crews v. Cloncs, 303 F.Supp. 1370 (S.D. Indiana, 1969), which was decided on a record similar to the case at bar, although additional factors are present in this record to support the reasonableness of the school's regulations. The Court in *Crews* found the Fifth Circuit's decision in *Ferrell* "very well reasoned and highly persuasive." In light of Davis v. Firment, supra, it is clear that Crews v. Cloncs accords with the rules now settled in this circuit.

This Court's sentiments were well expressed by Judge Lawrence in the case of Stevenson v. Wheeler County Board of Education, 306 F.Supp. 97 (S.D.Ga. Nov. 17, 1969), when he said:

"Among the things a student is supposed to learn at school (at least such is my idea) is a sense of discipline. Of course, rules cannot be made by authorities for the sake of making them but they should possess considerable leeway in promulgating regulations for the proper conduct of students. Courts should uphold them where there is any rational basis for the questioned rule. All that is necessary is a reasonable connection of the rule with the proper operation of the schools. By accepting an education at public expense pupils at the elementary or high school level subject themselves to considerable discretion on the part of school authorities as to the manner in which they deport themselves. Those who run public schools should be the judges in such matters, not the courts. The quicker judges get out of the business of running schools the better. * * * Except in extreme cases the judgment of school officials should be final in applying a regulation to an individual case."

The defendants' motion to dismiss, which is treated herein as a motion for summary judgment, is granted, and plaintiffs' motion for a temporary injunction is denied.

The foregoing shall constitute findings of fact and conclusions of law.