Ellen CROSSEN, on behalf of her son and next friend, Raymond Crossen, Plaintiff,

v.

Theodore FATSI, Principal of Tourtellotte Memorial High School, at al., Defendants.

Civ. A. No. 13678.

United States District Court, D. Connecticut.

Feb. 16, 1970.

Bruce N. Berwald, Willimantic, Conn., for plaintiff.

Raymond T. Wheaton, Putnam, Conn., for defendants.

RULING ON MOTION FOR PRELIMINARY INJUNCTION

CLARIE, District Judge.

The plaintiff, a minor aged fifteen years, brings this action by his mother and next friend asking that a court of equity grant injunctive relief, ordering the defendants to immediately reinstate him as a pupil in the public high school. Jurisdiction is alleged under 28 U.S.C. §§ 2201–2202, and relief is sought pursuant to the Civil Rights Act, 42 U.S.C. § 1983.

The Court finds that the high school dress code policy [1] relied upon by the defendants to establish general grooming standards for the student body is unduly vague, uncertain and ambiguous. Public school rules and regulations, which are intended to limit the personalized freedom of privacy and self-expression in one's personal appearance, implemented by such drastic enforcement procedures, as a suspension from classes for a three week period, a potential renewal of such suspension, or even permanent expulsion, are required to be stated with sufficient clarity and specificity, that students will be adequately informed as to what conduct will invite administrative discipline. The school grooming code in this instance is unconstitutionally vague and unenforceable; therefore, the plaintiff's prayer for relief is granted.

The boy is a first year classman at the Tourtellotte Memorial (Public) High School in Thompson, Connecticut. When school opened in September 1969, he resided in that town with his parents. However, he desired to pursue a course in Vocational Agriculture, which was not taught in the local high school. This required that he enroll at a neighboring community high school, in which the state provides a regional center to teach this subject; and he also signed up for the pre-college curriculum. He did very poorly scholastically in his pre-college course subjects and ceased attending school altogether about Thanksgiving time, because of personal illness.

On December 16, 1969, he requested a transfer back to his home town high school in Thompson, but the necessary papers were not completed until December 22, 1969, when he was admitted to class three days prior to the Christmas vacation. He was orally advised then of the existing dress code, as it applied to him and he immediately complied by shaving. When he returned to classes on January 5, 1970, however, he had permitted the sideburns to grow into a full beard and had also grown a mustache. The school principal again discussed with him, in the presence of the superintendent, the grooming code in effect at the school. They advised him that he would have until the following Monday, January 12, 1970, to decide whether or not he would voluntarily comply. When he refused, he was ordered suspended from classes until he did conform.[2] This action by the school administrators was unanimously approved by the nine members of the Town Board of Education, which met that evening and a follow-up letter dated January 14, 1970, noticing the suspension action was mailed to the boy's parents by the principal.

It was testified that the boy's father did not approve of his son's decision, but the mother took a contrary position. The school principal explained that board policy requires that any administrative suspension is limited to a maximum of three weeks; and in this instance the plaintiff had been notified to return to classes on Febrary 5, 1970, the day following the court hearing. This would not preclude however, a renewal of the original suspension order, should he still insist on non-compliance or taking formal action to expel him.[3] On January 30, 1970, government counsel for the office of the Tolland-Windham Legal Assistance Program, Inc., filed this action in behalf of the plaintiff and requested that the Court order his reinstatement.

The dress code regulation, which is the subject of this controversy, reads as follows:

"Students are to be neatly dressed and groomed, maintaining standards of

1. "Students are to be neatly dressed and groomed, maintaining standards of modesty, and good taste conducive to an educational atmosphere. It is expected that clothing and grooming not be of an extreme style and fashion."

2. Conn.Gen.Stat. § 10–233:

3. Conn.Gen.Stat. § 10–234.

modesty and good taste conducive to an educational atmosphere. It is expected that clothing and grooming not be of an extreme style and fashion."

The school principal disclosed that this code had been effective for approximately two years and had worked very satisfactorily. It had been drawn up originally by a student-faculty advisory committee. Thereafter it was reviewed and approved by the Student Council, endorsed by the faculty and administration and formally approved by the Town Board of Education.

The school administration's involvement of all segments of the school in this policy making code was a commendable educational effort to achieve an experience in self-government by those affected by it. The first draft of the regulation was very specific, but a thorough discussion and appraisal of its objectives caused the committee to redraft the code, so that it could afford elasticity in its application and not be straight-jacketed by specifics. Beards and sideburns two or three inches below the ears and long hair below the shirt collar were considered by the principal to have been prohibited by the simple statement, "It is expected that clothing and grooming not be of an extreme style and fashion." The plaintiff-pupil contends that his beard and mustache were not prohibited under the present code, because he does not consider it to be an extreme style or fashion; and if it is so construed, it violates among other things, his constitutional right to privacy and freedom of expression; furthermore, he claims that the proceedings relating to his suspension were generally lacking in due process, because final action was taken without a full hearing.

■ The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1343(3) and 1343(4).[4] The complaint alleges that the plaintiff is being deprived of a right involving his personal liberty and bases his action on the Civil Rights Act, 42 U.S.C. § 1983.[5] The local Board of Education not only had approved the original form of the challenged regulation, but it had also ratified its application to this plaintiff by approving the school administrator's punitive suspension action. No adequate administrative remedies remained, which might afford prompt and effective relief. It is a recognized precept that whenever the right or immunity invaded affects personal liberty and is not dependent for its existence upon the infringement of property rights, a federal statutory remedy under § 1983 is available, without the plaintiff first being required to exhaust state remedies. Damico v. California, 389 U.S. 416, 88 S.Ct. 526, 19 L.Ed.2d 647 (1967); McNeese v. Board of Education, etc., 373 U.S. 668, 83 S.Ct. 1433, 10 L.Ed.2d 622 (1963); Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961); Hague v. CIO, 307 U.S. 496, 529, 59 S.Ct. 954, 83 L.Ed. 1423 (1939); McCall v. Shapiro, 416 F.2d 246, 249–250 (2d Cir. 1969); Eisen v. Eastman, 421 F.2d 560 (2d Cir. Nov. 28, 1969).

Secondary school regulations, which discourage extremes in personal groom-

---

4. 28 U.S.C. § 1343(3) and 1343(4):

(3) "To redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States."

(4) "To recover damages or to secure equitable or other relief under any Act of Congress providing for the protection of civil rights."

5. 42 U.S.C.A. § 1983:

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State * * * subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

ing have been challenged with conflicting results in several states and federal courts in various parts of the Country. The five-member Massachusetts Supreme Judicial Court unanimously sustained a demurrer to a complaint which challenged a local school regulation barring a student from classes, because of the length and appearance of his hair. The court apparently took judicial cognizance of the fact, that since the student's unusual hair style could result in the distraction of other pupils and thus disrupt and impede the maintenance of a proper classroom atomosphere, its validity was founded on a rational basis and would be sustained and enforced. Leonard v. School Committee of Attleboro, 349 Mass. 704, 212 N.E.2d 468, 14 A.L. R.3d 1192 (1965). However, a recent case in the federal district court in that same state held to the contrary in the absence of a factual showing of reasonable disciplinary demands. Richards v. Thurston, 304 F.Supp. 449, 452–453 (1969). It concluded:

" * * * (T)he state * * * has no such rational ground for dictating hair style to a pupil in a general high school as to support an official order interfering with his liberty to express in his own way his preference as to whatever hair style comports with his personality and his search for his own identity."

A recent landmark case in the Supreme Court involving the enforcement of administrative disciplinary codes in secondary schools concerned the suspension of pupils from high school for wearing arm bands, which protested the Viet Nam War, in violation of a local school regulation. Tinker v. Des Moines Independent Community School Dist., 393 U.S. 503, 89 S.Ct. 733, 21 L.Ed.2d 731 (1968). The court reversed the district court (whose decision had been affirmed by a divided appellate court (4–4) ) on the grounds that this school regulation proscribed freedom of expression in violation of the first and fourteenth amendments. Those federal courts who have considered this issue on

constitutional grounds adhere to the basic criterion that where there is no finding or showing that engaging in the forbidden conduct would materially and substantially interfere with the requirements of appropriate discipline in the operation of the school, the prohibition cannot be sustained. Griffin v. Tatum, 300 F.Supp. 60, 62 (M.D. Ala.1969); Crews v. Cloncs, 303 F.Supp. 1370, 1375–1376 (S.D. Ind.1969); Richards v. Thurston, 304 F.Supp. 449 (D.Mass. 1969); Soglin v. Kauffman, 295 F.Supp. 978 (W.D.Wis.1968); Breen v. Kahl, 419 F.2d 1034 (7th Cir. Dec. 3, 1969); Westley v. Rossi, 305 F.Supp. 706 (D. Minn. Oct. 9, 1969); Sims v. Colfax County Sch. District, 307 F.Supp. 485, (S. Iowa Jan. 16, 1970). The court in *Tinker, supra,* did make it clear inferentially, that it did not intend to extend its concern for freedom of expression to other areas of school discipline.

"The problem posed by the present case does not relate to regulation of the length of skirts or the type of clothing, or hair style, or deportment." *Tinker, supra,* 393 U.S. at [507–508, 89 S.Ct. at 737; also see Ferrell v. Dallas Independent School Dist., 392 F.2d 697 (5th Cir. 1968).

The plaintiff here claims an invasion of his personal liberty, because he is being deprived of expressing the personal appearance which he believes to be best suited to his individual personality in a manner of his own choosing, in violation of the ninth and fourteenth amendments. He at no time has contended that his choice of grooming was intended to symbolize any specific viewpoint, demonstrate an expression of ideas, or otherwise constitute symbolic speech as protected by the first amendment.

The wordage of the school code in stating what is "expected" is too vague and overbroad. It leaves to the arbitrary whim of the school principal, what in fact constitutes extreme fashion or style in the matter of personal grooming and permits his own subjec-

tive opinion to be the sole measure of censorship. This elusive test of acceptability makes the existing rule too imprecise to be enforceable, since its purpose limits and invades the plaintiff's right of privacy, as protected in the ninth and fourteenth amendments. Griswold v. Connecticut, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1964).

The school principal testified in response to a question as to whether or not the plaintiff-pupil's appearance was "sloppy," (that term being defined as the opposite to "good taste, modesty and good grooming,") and he replied, "No, I wouldn't say in that case what you are saying is sloppy." The ambiguity, arbitrariness and vagueness in the defendants' application of the code invites further confusion, when one compares the testimony of the Superintendent of Schools, Dr. Trainor. He was asked whether or not he saw any substantial difference in the grooming code's permitting a high school boy to wear a mustache, but not long sideburns or a beard, and he replied, "I was surprised that we have youngsters * * * and if (the principal) says there are some, there are;—he would know better than I do—I was surprised we have any with mustaches. I would consider this, personally, extreme in my opinion, a mustache on a youngster in a public high school between the ages of 12 and 18. * * *" It thus becomes apparent that the school administrators themselves are in disagreement as to the code's meaning due to its unduly vague and imprecise wordage.[6]

So that the Court's ruling will not be misunderstood, it is expressly stated that the school board does have the authority[7] to formally adopt a standard of personal grooming for high school pupils. However, such a code must clearly define the standards and it should be reasonably designed to avoid the disruption of the classroom atmosphere and decorum, prevent disturbances among students, avoid the distraction of other pupils or interference with the educational process at the school.

The delegation of the rule making authority in this area of personal grooming to the unrestricted personal taste of a school administrator, without furnishing adequate guide lines, is unconstitutionally vague; especially is this so, when it invades the right of personal privacy and attempts to control the liberty to express one's personal individuality in his physical appearance.

The evidence discloses that the mere presence of this boy in the school, for the four or five days he was there, did not disrupt or interfere with the classroom decorum or atmosphere. However, that alone is not a true test, for if it were, the enforcement of any general rule would rest on the effect each individual case had on the educational process. Turmoil and controversy would then be invited and such a variable individual criterion could destroy the meaning and application of the constitutional guarantee of equal protection. Once the gates are lowered or the standards destroyed, it is reasonably probable that the extremes and oddities sought to be avoided would flourish unlimited to the detriment of quality education.

Any attempt to compare and equate the constitutional rights of adults in this area of personal grooming, on the same plane with that of adolescent high school teenagers, who are compelled by law to attend school until 16 years of

---

6. "Disciplinary proceedings should be instituted only for violation of standards of conduct defined in advance and published through such means as a student handbook or a generally available body of university regulations. Offenses should be as clearly defined as possible, and such vague phrases as 'undesirable conduct' or 'conduct injurious to the best interests of the institution' should be avoided. Conceptions of misconduct particular to the institution need a clear and explicit definition." 51 Amer.Assoc. University Professors Bull. 447, 449 (1965); Soglin v. Kauffman, 295 F.Supp. 978, 990 (1968).

7. Conn.Gen.Stat. § 10–221.

age,[8] is like comparing oranges and apples. The compulsory nature of public or private education at the high school level involves added disciplines essential to maintain the purpose and fabric of that relationship, free of disruption, so that educational objectives are most likely to be attained.

"The establishment of an educational program requires the formulation of rules and regulations necessary for the maintenance of an orderly program of classroom learning. In formulating regulations, including those pertaining to the discipline of school children, school officials have a wide latitude of discretion. But the school is always bound by the requirement that the rules and regulations must be reasonable. It is not for us to consider whether such rules are wise or expedient but merely whether they are a reasonable exercise of the power and discretion of the school authorities.

"Regulations which are essential in maintaining order and discipline on school property are reasonable. Thus school rules which assign students to a particular class, forbid unnecessary discussion in the classroom and prohibit the exchange of conversation between students are reasonable even though these regulations infringe on such basic rights as freedom of speech and association, because they are necessary for the orderly presentation of classroom activities. Therefore, a reasonable regulation is one which measurably contributes to the maintenance of order and decorum within the educational system." Burnside v. Byars, 363 F.2d 744, 748 (5th Cir. 1966); also see Ferrell v. Dallas Independent School District, 392 F.2d 697 (5th Cir. 1968).

1. A decree may enter that the plaintiff be reinstated forthwith as a student in good standing at the Tourtellotte Memorial High School with the same rights, privileges and immunities as those before his suspension.

2. That there be expunged from the school's record any notation disparaging to his conduct record as related to the disciplinary suspension against which plaintiff complained in this action.

3. That defendants be enjoined from suspending or disciplining him on account of his grooming based upon the existing code before this Court.

4. That plaintiff recover his costs.

The foregoing opinion shall constitute the findings of fact and conclusions of law required to be filed by the Court pursuant to Rule 52(a), Fed.R.Civ.P. So ordered.