**Don H. ARNOLD, individually and as Superintendent of Lakeland Community School Corporation, et al., Defendants-Appellants,**

v.

**Greg CARPENTER, a minor, b/n/f Chester Carpenter, et al., Plaintiffs-Appellees.**

**No. 18945.**

United States Court of Appeals, Seventh Circuit.

April 25, 1972.

Rehearing Denied Dec. 5, 1972.

Arthur A. May, of Crumpacker, May, Levy & Searer, South Bend, Ind., for defendants-appellants.

Thomas H. Singer, South Bend, Ind., for plaintiffs-appellees.

Before CASTLE, Senior Circuit Judge, and KILEY and STEVENS, Circuit Judges.

KILEY, Circuit Judge.

Defendant Community School Corporation (Board) appeals from a judgment for plaintiff Carpenter declaring Wawasee High School's [1] 1970–71 dress code provisions regulating the length and style of hair for male students void as violative of due process. The district court enjoined enforcement of that part of the code. We affirm.

The dress code was developed by a committee of students, teachers and administrators. The student committee members were elected by the student body. The code was adopted by a majority of the students. In general the code [2] sought "to insure the best possible overall appearance" of the student body and was expressly intended as a guide to students, "where common sense fails to be a sufficient code of appearance."

A consent provision [3] authorized noncompliance with the code requirements

---

1. Wawasee High School, Syracuse, Kosciusko County, Indiana.

2. The long hair provision reads as follows:

Faces must be clean shaven. Sideburns are not to be longer than one inch from the bottom of the ear lobe and must not be more than two inches wide at the bottom.

Hair should be well groomed and clean at all times. Skin must be showing above the eyebrows, and hair must not be over the ears and shirt collar.

3. If any student feels that it is absolutely necessary for him to present an appearance other than this, he may do so only under the following conditions: The parent or legal guardian must sign before (in the presence of) the principal or designated administrator a statement each school year which identifies the desired deviation from the accepted dress code and which signifies the willingness of the parent or legal guardian to authorize his youngster to present an appearance other than the dress code recommendations.

\* \* \* \* \*

All first-semester deviations must be signed by September 15. Second-semester deviations are to be signed between January 1 and January 15. We encourage deviation requests only when absolutely necessary, as the adopted code is a flexible and liberal code and meets the needs of our school community.

when "absolutely necessary" if at the beginning of each semester a parent appeared before the school principal and gave written consent for the exception of his child. Under the code an offending student was punishable by separating him from classmates, assigning him to a different room and depriving him of any classroom participation until he adhered to the code.

Parents were given written notice, before the 1970 school year, of the adoption of the code and its provisions, including the consent provision. When school opened in the fall of 1970, parents of four students, including Carpenter, refused to consent.[4] The code penalty was imposed on Greg. Carpenter's suit, the hearing and judgment before us followed.

The district court effectually concluded on the above facts that Greg Carpenter had the right to wear his hair "at any length or in any style;" that the Board had the "substantial burden"— which it did not sustain—to justify the code limitation of that right; and that the consent provision of the code was "an attempt to discourage" Greg's exercise of that right and that it accordingly violated the due process clause of the Fourteenth Amendment. The court ordered defendants permanently enjoined from enforcing the hair provision of the code and from imposing a penalty for its violation.

I.

The board argues that because the code was formed by a committee of "students, teachers and administrators" and adopted by a majority of the students, it was not an unreasonable and arbitrary interference with Greg Carpenter's Fourteenth Amendment right.

In Breen v. Kahl, 419 F.2d 1034, 1036 (7th Cir. 1969), and Crews v. Cloncs, 432 F.2d 1259, 1263 (7th Cir. 1970), this Circuit[5] decided that "the right to wear

---

4. Greg Carpenter's parents concurred in their son's right to wear long hair.

5. The circuits are presently divided 4–4 as to the constitutional right of a student to choose the length of his hair.

The First, Fourth Seventh and Eighth Circuits have recognized the right, although they differ as to its source. In Breen v. Kahl, 419 F.2d 1034 (7th Cir. 1969), cert. den. 398 U.S. 937, 90 S.Ct. 1836, 26 L.Ed.2d 268, this court placed the right as either within the penumbras of the First Amendment freedom of speech, or within the Ninth Amendment rights retained by the people. In Richards v. Thurston, 424 F.2d 1281 (1st Cir. 1970), the court designated the right as within the "liberty" assurance of the Fourteenth Amendment due process clause. In Bishop v. Colaw, 450 F.2d 1069 (8th Cir. 1971), the Eighth Circuit identified the right as the "freedom to govern one's personal appearance" and retained under the Ninth Amendment. Finally, in Massie v. Henry, 455 F.2d 779 (4th Cir., decided Feb. 2, 1972), the court referred to the right to wear hair as one wishes as "an aspect of the right to be secure in one's person guaranteed by the due process clause" but having "equal protection" overlappings.

The Fifth, Sixth, Ninth and Tenth Circuits do not recognize any constitutional right and have upheld regulations limiting the length and style of hair, although their approaches have also differed. The most prevalent view among these circuits is that the "long hair" problem is too insubstantial to warrant federal court consideration. Stevenson v. Board of Education, 426 F.2d 1154 (5th Cir. 1970), cert. den. 400 U.S. 957, 91 S.Ct. 355, 27 L. Ed.2d 265; King v. Saddleback, 445 F.2d 932, 940 (9th Cir. 1971); Freeman v. Flake, 448 F.2d 258 (10th Cir. 1971). In Jackson v. Dorrier, 424 F.2d 213 (6th Cir. 1970), cert. den. 400 U.S. 850, 91 S.Ct. 55, 27 L.Ed.2d 88, the court held that there was no violation of First, Ninth or Fourteenth Amendment rights and that the "regulation ha[d] a real and reasonable connection with the successful operation of the educational system and with the maintenance of school discipline." 424 F.2d at 218.

It is understandable why some judges find students' "long hair" claims constitutionally insubstantial. Measured against today's great constitutional issues (capital punishment, abortion, school segregation) the question of whether a student may or may not have constitutional protection in selection of his hair dress appears de minimis. Perhaps even judges who sustain the right are nagged with impatience and doubt when faced with

one's hair at any length or in any desired manner is an ingredient of personal freedom protected by the United States Constitution," and that to limit or curtail that right, the state bore a "substantial burden of justification." In *Breen* we held that since the students' long hair did not create a disturbance of the efficient operation of the school, the state did not bear its burden of justification. In *Crews* we held that the disturbance shown was insufficient justification and we also considered and rejected as insufficient the Board's reliance for justification upon "health and safety reasons."

The Board here does not claim that Greg's long hair disturbed classroom decorum, distracted other students, interfered with the efficient operation of the school, or that the hair provision of the code was reasonably related to safety or health. It does not dispute the right to wear one's hair in any manner or style. It argues that decisions upholding that right (*Breen* and *Crews*) do not control here because of the "unique" democratic formulation of the dress code by Wawasee High School. The Board's case stands or falls therefore upon the sole claim that the adoption of the code by the democratic teacher-student-parent process, with the consent provision, justifies enforcing the code.

The Board relies on Wood v. Alamo Heights Independent School District, 308 F.Supp. 551 (W.D.Tex.1970). The decision in *Wood*, however, did not rest precisely upon the ground urged by the defendants before us. In that case, aside from the student participation in adopting the code, there was expert testimony that "extremes" in hair style had in the past created classroom distractions and disturbances. The court thought that the student participation "seem[ed]" to demonstrate a "reasonable and considerate approach" by the school authorities. *Wood*, at 553. The court also thought there was a not unreasonable basis for expert opinions "that lack of reasonable limits for student grooming would substantially affect discipline and decorum." *Wood*, at 553.

In Bishop v. Colaw, 450 F.2d 1069 (8th Cir. 1971), the court held that the school board regulation against long hair was invalid and unenforceable since it infringed the student's Ninth Amendment constitutional right to govern one's personal appearance. Following the holdings in *Breen* and *Crews*, the court's opinion by Judge Myron Bright held that the defendant school board failed to demonstrate the necessity of the long hair regulation. The court also viewed the manner in which the code was adopted and then stated:

> Nor does the acceptance of the dress code by the *majority* of the St. Charles community and students justify the infringement of Stephen's liberty to govern his personal appearance. Toleration of individual differences is basic to our democracy, whether those differences be in religion, politics, or life-style. 450 F.2d at 1077. (Emphasis added.)

In Massie v. Henry, 455 F.2d 779 (4th Cir., decided Feb. 2, 1972), the court held that the school's long hair regula-

---

student claims. But we look down across a gap of a generation or two, from the Olympian heights of what we consider the great issues. For the high school student claimant, however, the right to wear "long hair" is an issue vital to him and we have seen what he is willing to sacrifice for his claim. It is settled that the students have constitutional rights of freedom and there appears to be no reason why the values of freedom are less precious in a younger generation than in an older. The principle of freedom as the source of our free choices of conduct does not change from generation to generation. Its application on particular facts in student cases is subject to limitation relative to the age, needs and situation of the student and to the reasonable requirements of the common good or state interests. For these reasons it would seem appropriate for the courts to acknowledge the student right as substantial and weigh its exercise in each case with due regard to the freedom and good of the student and to the reasonable needs of the school.

tion violated the student's right to be secure in one's person guaranteed by the due process clause of the Fourteenth Amendment, even though the regulation there had been "recommended by a student-faculty-parent committee." In striking down the regulation, the court looked not to the student participation in its formulation, but to the reasons given by the board as justification for the code.[6]

■ We conclude that the democratic process used in adopting the code does not per se justify the denial of Greg Carpenter's constitutional right to wear his hair in the mode he chooses.

■ The school code hair provision, to justify impinging Greg's constitutional right, must have a reasonable relation to some purpose within the school's competence, such as avoiding substantial disruption of school activities or discipline. *See generally* Tinker v. Des Moines School District, 393 U.S. 503, 507, 514, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969); Meyer v. Nebraska, 262 U.S. 390, 43 S.Ct. 625, 67 L.Ed. 1042 (1923); Pierce v. Society of Sisters, 268 U.S. 510, 45 S.Ct. 571, 69 L.Ed. 1070 (1925); West Virginia State Board of Education v. Barnette, 319 U.S. 624, 63 S.Ct. 1178, 87 L.Ed. 1628 (1942). And in the absence of justification, the long hair provision must fall. *Breen, Crews, Bishop, Massie, supra.*

■ We hold, on authority of this court's decisions in *Breen* and *Crews*, as expanded in *Bishop* and *Massie*, that mere student participation in adoption of the code alone did not justify the limitation imposed on Greg Carpenter's constitutional right to wear long hair.

## II.

Defendants contend that nevertheless the consent provision saves the dress code hair provisions from fatal constitutional infirmity. The argument is that under *Breen*, 419 F.2d at 1037, the school and parent must share responsibility in the matter of hair grooming, and that the parent has the primary function for the child's care and nurture in preparation for life in our society. Accordingly, the defendants claim that the consent provision of the code places responsibility for noncompliance with the parent where it belongs. They also rely upon various provisions [7] of Indiana law which place primary responsibility upon the parent for fundamental supervision of the child's welfare.

■ We recognize, of course, the primary responsibility of parents during out-of-school hours. We noted in *Breen* and *Crews* the conflict that arises between a school's short hair requirements during school hours and a parent's consent to long hair outside of school hours. True, had the father given written consent here, there would be no "conflict" between operation of the code during school hours and the student's or parent's wishes outside of school hours. However, we think that the mere failure of the parents to sign the consent form should not be used by the school as a basis for denying Greg the constitutional right to determine his own hair length. Moreover, since he appeared at school with long hair, it would seem prima facie that his parents were agreeable to it. We think the father could well with reason have decided, for instance, not to chill his son's dissent from conforming to the requirements of the code. And if

6. In Crossen v. Fatsi, 309 F.Supp. 114, 116 (Conn.1970), and Whitsell v. Pampa Independent School District, 316 F.Supp. 852, 854 (N.D.Tex.1970), students participated in adopting the code. *Whitsell* followed *Wood* in upholding the code, although the court relied upon evidence of disruptive effect of noncompliance. In *Crossen* the court struck down the code as impermissibly vague. Neither court's decision rested solely upon the method used for adoption of the code.

7. Defendants rely on Burns Ind.Stat.Ann. §§ 28–529, 28–505 providing for student absence from certain hygiene or health instructions, upon parental consent; and § 35–2612, IC 1971, 16–1–24–12 permitting a child to be excused from class in order to attend religious classes, upon parental consent; see also § 28–505a.

the father had that purpose, we are not persuaded he violated a paternal duty even if the father's refusal to consent was "induced by certain political or sociological motivations," as suggested by defendants. Not all fathers prefer to have their student sons conform unquestionably to the decision of the majority, or look upon dissent as meriting punishment.

■ In our opinion the consent clause does not cure the fatal constitutional infirmity in the hair provision. See School District of Abington Tp. v. Schempp, 374 U.S. 203, 83 S.Ct. 1560, 10 L.Ed.2d 844 (1963), where the provision authorizing student absence from public classroom religious exercises—which violated the First Amendment free exercise and establishment clauses—did not save the Pennsylvania statute.

Having followed *Breen* and *Crews* in establishing Greg Carpenter's constitutional right, and finding no countervailing state interest justifying a limitation of that right, we see no basis upon which the Board can justify limitation by requiring a parent's written consent for a student's exercise of his right.

### III.

We think the district court's findings are sufficiently comprehensive to show the basis for the court's conclusions. Atwood v. Fidelity & Dep. Co., 379 F.2d 498, 500 (7th Cir. 1967). The court expressly found that Greg Carpenter had a constitutional right to wear his hair at any length, that the defendants bore the burden of substantial justification of the hair provision, and that they failed to satisfy that burden. There were the legal elements necessary for the court's judgment that the hair length limitation provision of the code violated Greg Carpenter's constitutional right and is "null and void," and that the consent provisions attempted to "discourage" or chill Greg's exercise of that right.

Affirmed.

STEVENS, Circuit Judge (dissenting).

If the sovereign elects to provide its citizens with protection against violence, disease and ignorance through public police, garbage collection and schools, such protection must be afforded to all on an equal basis. It is not necessary to decide that an individual has a constitutional right to appear as he pleases to recognize that a state may not deprive a child of a public education because he is ugly or ignorant, or because his hair style differs from that preferred by the majority at any given point in time.

On the other hand, the fact that absurd arguments have been advanced to support certain dress codes, or the fact that the older generation has overreacted in its response to the younger generation's desire to do its own thing, should not obscure the fact that society does have a legitimate interest in both the continuity and the mutability of its mores.

Personal appearance, which comprises forms of dress and cleanliness, as well as hair styles, is merely one aspect of social behavior which the British broadly describe as "manners." For centuries the older generation has forcefully imposed its manners on the young. With equal regularity the young have demonstrated that particular manners have no rational basis or cannot be justified by any compelling social interest. So manners continually change at varying rates. Conformity and nonconformity both serve legitimate ends.

In the process of requiring the young to conform to the manners of their elders, parents and teachers are necessarily partners. If they agree that a child should be compelled to observe a given form of tradition, no matter how irrational it may be, the child has no legitimate recourse but to obey. To the extent that parents and teachers stand together, a child has no enforceable constitutional right to do his own thing.

It is only when the parent supports a child's attempt to accelerate a change in

customs that a meaningful conflict arises. Regardless of whether parental support of a child's attack on one aspect of our manners has a constitutional predicate, as a matter of policy that support is certainly entitled to respect. If that respect produces an accommodation which avoids an irreconcilable confrontation (such as a choice between a denial of education on the one hand and conformity to manners unacceptable to the child's own parents on the other), the need for judicial participation in the process of social change can be obviated.[1] Such an accommodation is reflected by this case.

As in so many matters of school administration which appropriately recognize a parent's interest in nonconformity,[2] this dress code excused the child from compliance upon the request of his parents. Since the child has no enforceable right to remain unshorn or unwashed without parental consent, I find nothing offensive in a dress code which merely requires conformity unless excused by a child's parents.[3]

I would not open the federal courts to a parent who, by simply giving the school administrators appropriate evidence of his consent, has available an adequate remedy to protect his child's interest in nonconformity or in a particular mode of appearance.[4] The interest which plaintiff and his child seek to vindicate by this litigation does not, in my opinion, warrant invasion of an area in which other parents, in partnership with the teachers, and possibly also a substantial majority of the student body,[5] have agreed that a measure of conformity to tradition is desirable. Just as the majority must learn to tolerate the nonconformist, so must he learn to tolerate the transient customs of his elders.[6]

---

1. It does not take the wisdom of Solomon to recognize that dress codes which have been judicially condemned were doomed to fall in due course in any event. Judicial participation in the process of changing mores can affect the rate of change, but we certainly do not decide whether or not the change will occur. Economic conditions in England, which tended to exclude the cost of tonsorial services from the average man's budget, and thus to develop a public attitude favorable to the hairstyle of the Beatles, probably did more to accelerate this particular social change than all of the constitutional analysis which litigation like this has engendered.

2. See e. g., footnote 7 in Judge Kiley's opinion.

3. The form by which such consent should be evidenced in order to ensure its reliability certainly raises no issue of constitutional dimensions. Quite obviously, the constitutional objection to placing the power, prestige, and financial support of government behind a particular religious belief, see Engel v. Vitale, 370 U.S. 421, 430–431, 82 S.Ct. 1261, 8 L.Ed.2d 601; School District of Abington Tp. v. Schempp, 374 U.S. 203, 224–225, 83 S.Ct. 1560, 10 L.Ed.2d 844, has no application to a public school's attempt to teach children acceptable manners.

4. If the principle of federalism requires the great writ of habeas corpus to be withheld from a prisoner detained, possibly for years, in violation of his constitutional rights, I cannot understand why we should intervene in this case to save a child's parent from walking over to the principal's office where the only relief his son has standing to obtain is available for the asking. Invalidation of the entire dress code may make it possible for this child both (1) to wear his own hair style and (2) to have more of his peers do likewise, and thus enable him to be more of a conformist. It does nothing to protect any significant interest in nonconformity. Indeed, if the slight inconvenience to his father of evidencing his consent in person has a "chilling effect" on that interest, our would-be nonconformist might as well get a haircut.

5. The fact that 75% of the student body may have voted in favor of the dress code set forth in the record is not necessarily persuasive because neither the alternatives presented to them, nor the actual voluntariness of the vote, can be determined on the basis of the pleadings.

6. "The state's authority over children's activities is broader than over like actions of adults. This is peculiarly true of public activities and in matters of employment. A democratic society rests, for its continuance, upon the healthy, well-rounded growth of young people in full maturity as citizens, with all that implies." Prince v. Massachusetts, 321 U.S. 158, 168, 64 S. Ct. 438, 443, 88 L.Ed. 645.

In sum, there are three reasons why the federal writ should not have issued: (1) the record discloses no danger that a child may be arbitrarily deprived of an education, nor any threat to the fundamental values of freedom of speech, of inquiry, and of belief—the threat of irreparable injury is wholly absent; (2) if we ignore the admonition not to "intervene in the resolution of conflicts which arise in the daily operation of school systems and which do not directly and sharply implicate basic constitutional values,"[7] the quality of our work, and the respect which it commands in the community, must inevitably decrease as our workload increases; and (3) of greatest importance, I believe the decision nourishes the pernicious seed of intolerance by encouraging confrontation rather than accommodation. I would not force Gregory to fast on Saturday when he visits Rome, but I would teach him not to sneer at Romans who do.

I respectfully dissent.

7. See Epperson v. Arkansas, 393 U.S. 97, 104, 89 S.Ct. 266, 270, 21 L.Ed.2d 228.