

# Office of the Attorney General
## State of Texas

**DAN MORALES**
ATTORNEY GENERAL

May 20, 1998

The Honorable J.E. "Buster" Brown
Chair, Natural Resources Committee
Texas State Senate
P.O. Box 12068
Austin, Texas 78711-2068

Opinion No. DM-476

Re: Whether a local school official may refuse to permit a Department of Protective and Regulatory Services investigator, investigating reported child abuse, to interview a child at school, and related questions (RQ-1035)

Dear Senator Brown:

Family Code section 261.302(b)(1) permits an investigator, investigating reported child abuse, to interview an allegedly victimized child at the child's school. Subsection (b)(2) of the same section permits an investigator to include in the interview "the presence of persons" the investigator "determines are necessary." Section 261.303(a) prohibits a person from interfering with an investigation of child abuse or neglect. You ask whether, absent a court order to the contrary and without being deemed to have interfered with an investigation under section 261.303(a), a local school official, such as a principal, may deny an investigator access to a student at school or allow the investigator to conduct the interview at school on the condition that a school official be present.[1]

We break your question into three smaller issues. First, we consider whether a school official may refuse to permit an investigator to interview a child at school. We conclude the official may not. Second, we consider whether a school official may require that school personnel be present at a student interview that is conducted at the school. We conclude the official may not. Under Family Code section 261.302(b)(2), on the other hand, the investigator may allow school personnel to sit in on the interview if the investigator deems the person's presence "necessary." Third, we consider whether a school official who denies an investigator's request to conduct an interview at the school or who conditions approval on the presence of school personnel at the interview may interfere with the investigation in contravention of Family Code section 261.303(a). We conclude the official interferes.

We begin by examining Family Code chapter 261, which pertains to reports of child abuse or neglect. Under that chapter, any person who suspects that a child has been abused or neglected

---

[1]You also ask about an investigator's access to student records held at a school. The Open Records Division of this office is addressing this question in ORQ-24.

immediately must report the information to one of the entities listed in section 261.103.[2]  Reports that a child has been abused or neglected by a person responsible for the child's care are investigated by the Texas Department of Protective and Regulatory Services (DPRS) or "the agency designated by the court to be responsible for the protection of children" (the designated agency), working with the appropriate state or local law-enforcement agency.[3]  Reports of child abuse or neglect perpetrated by another person may be investigated by a local or state law-enforcement agency.[4]  Family Code section 261.302 guides an investigator in the conduct of the investigation:

> (a) The investigation may include:
>
> (1) a visit to the child's home, unless the alleged abuse or neglect can be confirmed or clearly ruled out without a home visit; and
>
> (2) an interview with and examination of the subject child, which may include a medical, psychological, or psychiatric examination.
>
> (b) The interview with and examination of the child may:
>
> (1) be conducted at any reasonable time and place, including the child's home or the child's school; and
>
> (2) include the presence of persons the department or designated agency determines are necessary.
>
> (c) The investigation may include an interview with the child's parents and an interview with and medical, psychological, or psychiatric examination of any child in the home.
>
> . . . . [5]

---

[2]*See* Fam. Code §§ 261.101(a), .103.

[3]*See id.* §§ 261.103(2), (4), .105(a), .301(a); *see also id.* § 261.001(2) (defining *department*).  The DPRS also may contract with the sheriffs of certain counties, under which contract the sheriff's department conducts investigations of child abuse for the DPRS.  *See id.* § 261.3019.

[4]*See id.* §§ 261.103(1), .105(b), (d), .301(c).  *But see id.* § 261.301(f).  We find no provision detailing what a state or local law-enforcement agency must or may determine in the course of its investigation.

If the abuse or neglect allegedly occurred in a facility operated, licensed, certified, or registered by a state agency, that state agency must promptly and thoroughly investigate the report in accordance with Family Code chapter 261, subchapter E.  *See id.* § 261.301(b).

[5]The goal of the investigation is to protect the child from further abuse or neglect.  *See id.* § 261.301(d).  Family
(continued...)

Family Code section 261.303(a) prohibits a person from interfering with an investigation: "A person may not interfere with an investigation of a report of child abuse or neglect conducted by the [DPRS] or designated agency."[6] Subsection (b) of that section permits an investigator to seek a court order directing a person in charge of "any place where the child may be" to allow the investigator to enter and to conduct the interview, examination, and investigation.

Family Code section 261.406 pertains specifically to a report of child abuse or neglect in a public or private school under the jurisdiction of the Texas Education Agency. Subsection (a) of that section orders a DPRS investigator to investigate such a report just as the investigator would investigate any other report under chapter 261. The DPRS must, however, send a written report of the investigation to the Texas Education Agency and the local school board or local governing body for appropriate action.[7] Local or state law-enforcement officers also may investigate a report of child abuse or neglect in the schools.[8]

Before we reach our own conclusions, we will summarize the arguments of an independent school district and the DPRS, as conveyed in letters to this office.[9] The school district's argument

---

[5](...continued)
Code section 261.301(e) lists several facts the DPRS or the designated agency should reach conclusions about, but the investigating agency need determine only those matters that are necessary to provide for the child's protection:

> As necessary to provide for the protection of the child, the department or designated agency shall determine:
>
> (1) the nature, extent, and cause of the abuse or neglect;
>
> (2) the identity of the person responsible for the abuse or neglect;
>
> (3) the names and conditions of the other children in the home;
>
> (4) an evaluation of the parents or persons responsible for the care of the child;
>
> (5) the adequacy of the home environment;
>
> (6) the relationship of the child to the persons responsible for the care, custody, or welfare of the child; and
>
> (7) all other pertinent data.

[6]We find nothing in Family Code chapter 261 that provides a penalty for interfering with an investigation.

[7]*See* Fam. Code § 261.406(b).

[8]*See id.* § 261.406(c).

[9]*See* Letter from David M. Feldman, Feldman & Rogers, L.L.P., representing Clear Creek Indep. Sch. Dist.,
(continued...)

is three-pronged. First, the school district argues that the Family Code does not require schools to permit investigators to conduct interviews in the schools. The school district points to the language of Family Code section 261.302(b)(1) in support of this argument: "The interview . . . *may* be conducted at . . . the child's school." According to the school district, the word *may* indicates that access to a child at school is within the discretion of school administrators. The school district further cites Family Code section 261.303(b), which permits an investigator to obtain a court order directing an individual in charge of a place where the child is, *e.g.*, a school, to allow the investigator to enter the facility. If section 261.302(b)(1) requires a school to accommodate an investigator upon the investigator's request, then, the school district continues, section 261.303(b) is meaningless. Second, the school district contends that school counselors are necessary parties to an interview conducted in the school. The school district bases its contention on a counselor's statutory duty to identify students at risk of dropping out of school[10] and to participate in planning and implementing a developmental guidance and counseling program to address these students' needs.[11] Third and finally, the school district argues that the school's duties and responsibilities under the Education Code obligate a school to regulate investigators' access to the school. Education Code sections 11.151(b) and 37.102(a) endow the board of trustees of an independent school district with exclusive power to manage the district's public schools and authorize it to adopt disciplinary rules to protect the safety and welfare of students, as well as employees and property.

The DPRS, on the other hand, interprets Family Code section 261.302 to "take certain actions *as the investigator deems necessary.*"[12] The investigator's broad discretionary authority, the DPRS continues, is enhanced by the prohibition against interfering in an investigation, found in section 261.303(a), and the authority under section 261.303(b) to obtain court orders as necessary to enable the investigator to complete the investigation. Additionally, the DPRS contests school districts' claims that they may condition approval of an interview on the presence of school officials. As the DPRS sees it, the decision as to who may be present at an interview rests within the investigator's discretion. Putting the decision in the hands of the investigator, according to the DPRS, ensures "that the child is . . . as comfortable as possible so that the interviewer can obtain the most detailed and accurate information that the child can provide." The DPRS also relies upon Family Code section 261.201, which deems information developed in an investigation confidential, apparently suggesting that the presence of school personnel would jeopardize the information's confidentiality. Finally, the DPRS avers that in those cases where the individual alleged to have committed the abuse

---

[9](...continued)
to Sarah J. Shirley, Chair, Opinion Comm., Office of the Attorney General (Jan. 2, 1998) (on file with Opinion Comm.); Letter from Nancy O'Neill, Supervising Attorney, Texas Dep't of Protective & Regulatory Services, to Sarah J. Shirley, Chair, Opinion Comm., Office of the Attorney General (Jan. 5, 1998) (on file with Opinion Comm.).

[10]*See* Educ. Code § 29.081(b), (c), (d)(2)(D) (defining *student at risk of dropping out of school* and requiring school district to provide special programs).

[11]*See id.* §§ 33.005(2), .006(b)(1).

[12](Emphasis added.)

is employed by the school,[13] any school involvement in the investigation "creates at least the appearance of a conflict of interest and adds an unnecessary complication to the perceived integrity of the investigation."

We are guided in our interpretation by the overriding purpose of chapter 261: to protect children from abuse or neglect. In 1971, the legislature described the statute's purpose: "to protect children . . . by providing for the mandatory reporting of suspected cases."[14] The legislature further intended to bring the State's protective services to bear on the situation to "prevent further abuses, and to safeguard and enhance the welfare of these children."[15] Finally, the legislature directed that the statutes be administered and interpreted to provide "the greatest possible protection as promptly as possible" for the children who are affected by abuse or neglect.[16] In *Albright v. Texas Department of Human Services*,[17] the court likewise construed the substance of Family Code chapter 261 to make the protection of the child paramount "in instances of suspected child abuse."[18]

We conclude that a school official may not deny an investigator's request to interview a student at school. Only the DPRS or the designated agency is authorized, under the statute, to determine whether to interview a child at school or elsewhere. Family Code section 261.302(b)(1) clearly authorizes the investigator to interview or examine a child victim at any reasonable place "including the child's . . . school." Furthermore, we do not believe that the word *may* in section 261.302(b) indicates that a school official may refuse an investigator's request to interview a student in school. We concede that the term generally connotes permission, as opposed to the word *shall*, which generally connotes an imperative.[19] But we do not believe that our concession necessitates a conclusion that a school official has the discretion to refuse an investigator's request to conduct an interview in the school. Rather, in our view, the word *may* in section 261.302(b) gives discretion to determine where and how the interview will be conducted to the investigator.[20] Thus, with respect to your first question, it is the investigator who may decide whether to interview the alleged victim in the child's home, the child's school, or elsewhere.

---

[13]*See* Fam. Code §§ 261.001(5)(E), .406.

[14]Act of May 24, 1971, 62d Leg., R.S., ch. 902, sec. 1, § 1, 1971 Tex. Gen. Laws 2790, 2790.

[15]*Id.*

[16]*Id.*

[17]859 S.W.2d 575 (Tex. App.--Houston [1st Dist.] 1993, no writ).

[18]*Id.* at 580.

[19]*See* BRYAN A. GARNER, A DICTIONARY OF MODERN LEGAL USAGE 502 (1987) (contrasting *shall* and *may*).

[20]*See Gonzalez v. Avalos*, 866 S.W.2d 346, 350 (Tex. App.--El Paso 1993), *writ dism'd w.o.j.*, 907 S.W.2d 443 (Tex. 1995).

Indeed, the legislative history of the language *including the child's . . . school* buttresses our construction, as well as indicates that the debate between investigators and school officials is not new. The legislature added this language in 1983,[21] and the bill's author, Representative Willis, described for the House Committee on the Judiciary the need for the amendment:

> At the present time, when the case worker goes to school, ninety-five schools out of one hundred in Texas cooperates fully and lets them talk to the child. . . . But sometimes they don't, and all this bill does, it just gives the . . . case worker the right . . . to interview the child at the school.[22]

We believe the language of section 261.302(b)(1) effectuates Representative Willis' stated intent. Consequently, as the representative suggested, section 261.302(b)(1) gives an investigator a *right* to interview a child in school if the investigator desires to do so.

Moreover, we do not believe that section 261.303(b), which allows an investigator to obtain, upon a showing of good cause, a court order directing a school official to comply with the investigator's request, authorizes a school official to refuse an investigator's request to interview a child in the school. In our opinion, this provision applies only to those school officials who, blatantly disregarding section 261.302(b)(1), block an investigator's access to a school student. We note that the substance of section 261.303(b) was in the statutory predecessor to chapter 261 prior to the 1983 adoption of the substance of section 261.302(b)(1).[23] The 1983 legislation limited the utility of what is now section 261.301(b) with respect to school officials, but it did not render it meaningless.

We answer the second question consistently. In our opinion, Family Code section 261.302(b)(2) vests authority to determine who is a necessary party to the interview with the child solely in the investigator from the DPRS or other designated agency. Again, the word *may* in section 261.302(b) indicates that the decision is the investigator's, and no one else's. Accordingly, whether a school official, including a counselor, is *necessary* to conduct an interview and may therefore attend the interview is a matter for the investigator, not the school, to decide. Even so, we know of

---

[21]*See* Act of May 29, 1983, 68th Leg., R.S., ch. 753, § 1, 1983 Tex. Gen. Laws 4546, 4546. The legislature in 1983 amended the predecessor to Family Code section 261.302 by adding the language now found (essentially) in subsection (b): "The interview with the child may be conducted at any reasonable time and at any place, including the child's school. The investigation may include an interview with the child's parents." *See id.*

[22]Hearings on H.B. 358 Before the House Comm. on the Judiciary, 68th Leg., R.S. (Apr. 27, 1983) (statement of Representative Willis) (tape available from House Video/Audio Services Office).

[23]*See supra* note 21 (quoting 1983 addition to predecessor of Family Code section 261.302(b)).

nothing that forbids an investigator to determine that the presence of a school official is necessary to the interview.[24]

Finally, we conclude that a school official who refuses to allow an investigator to interview a student at school or who conditions approval of the request on the presence of school personnel may interfere with an investigation for purposes of Family Code section 261.303(a). The legislature added the substance of Family Code section 261.303(a) in 1995.[25] Unfortunately, we have been unable to find any legislative history that indicates what motivated the legislature to propose and then adopt this language.[26] We rely solely upon the provision's plain language. As it is commonly used,[27] the word *interfere* means "to interpose in a way that hinders or impedes."[28] We fail to see how refusing access to a student or conditioning access on the presence of school personnel can be anything but "interpos[ing] in a way that hinders or impedes." Forcing an investigator to obtain a court order to access a student at school delays the investigation's completion.[29] Such a delay is inconsistent with Family Code chapter 261's emphasis on a prompt resolution of the report of suspected child abuse or neglect. Section 261.301(a), for example, requires the DPRS or "designated agency" to make "a prompt and thorough investigation . . . ."[30]

None of the Education Code provisions to which the school district refers affect our conclusions. Of course, a school board has exclusive authority to manage the public schools in its

---

[24]In our view, the presence of a school official at an interview would not jeopardize the confidentiality of the information divulged there. We note that under Family Code section 261.201, which governs confidentiality and disclosure of information from a child-abuse-report investigation, the confidentiality attaches to the *information*. It does not, on the other hand, prohibit only certain persons to disclose the information.

[25]*See* Act of May 26, 1995, 74th Leg., R.S., ch. 751, § 96, 1995 Tex. Gen. Laws 3888, 3925.

[26]The language appears to have been added in a formal meeting of the House Committee on Juvenile Justice and Family Issues. Formal meetings generally are not tape-recorded.

[27]*See* Gov't Code § 311.011(a) (directing that words be construed consistently with common usage).

[28]WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY 631 (1990).

[29]*Cf. Equal Employment Opportunity Comm'n v. City of Orange*, 905 F. Supp. 381, 382 (E.D. Tex. 1995) (mem.) (holding that, despite state Open Meetings Act, Gov't Code ch. 551, City of Orange must release subpoenaed tapes of executive session to EEOC because "EEOC's investigative efforts into the employment practices of entities subject to [Open Meetings Act] would be delayed significantly if a court order were required to enforce every administrative subpoena served upon these entities.").

[30]*See also, e.g.*, Fam. Code §§ 261.101(a) (requiring person suspecting that child has been abused or neglected to *immediately* report information), (b) (requiring professional suspecting that child has been abused or neglected to report information *not later than 48th hour* after suspicion arises), .105(b) (requiring DPRS or designated agency *immediately* to notify appropriate state or local law-enforcement agency of reported child abuse or neglect).

district.[31]  Nonetheless, the school board's authority to adopt a particular regulation must be considered in light of other statutes.[32]  A school board may not adopt a regulation that contravenes other law.[33]  Additionally, a school's duty to identify students at risk of dropping out[34] and a counselor's duty to participate in planning and implementing a developmental guidance and counseling program to address the needs of students at risk of dropping out, among others, are not tantamount to a right to attend an investigator's interview with a student.  Rather, we believe the school's and the counselor's knowledge that a particular student has been the victim of abuse is sufficient for purposes of the Education Code.

---

[31]*See* Educ. Code § 11.51(b).

[32]*See Anderson v. Canyon Indep. Sch. Dist.*, 412 S.W.2d 387, 388 (Tex. Civ. App.--Amarillo 1967, no writ) (considering statutory predecessor to Educ. Code § 11.151(b)).

[33]*See Wood v. Alamo Heights Indep. Sch. Dist.*, 308 F. Supp. 551, 552 (W.D. Tex. 1970) (quoting *Wilson v. Abilene Indep. Sch. Dist.*, 190 S.W.2d 406, 412 (Tex. Civ. App.--Eastland 1945, writ ref'd w.o.m.)), *aff'd*, 433 F.2d 355 (5th Cir. 1970).

[34]*See* Educ. Code § 29.081(b), (c), (d)(2)(D) (defining *student at risk of dropping out of school* and requiring school district to provide special programs).

## S U M M A R Y

A local school official may not deny the request of an investigator, investigating a report of suspected child abuse or neglect under Family Code chapter 261, to interview a student (the alleged victim) in the school. In addition, a local school official may not condition granting the request on a requirement that school personnel, such as a counselor, attend the interview. A school official who denies an investigator access to a student or who conditions access upon the investigator conducting the interview in the presence of school personnel may interfere with the investigation for purposes of Family Code section 261.303(a).

Yours very truly,

DAN MORALES
Attorney General of Texas

JORGE VEGA
First Assistant Attorney General

SARAH J. SHIRLEY
Chair, Opinion Committee

Prepared by Kymberly K. Oltrogge
Assistant Attorney General